# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 12-1559 & 12-2177

PAUL VILLANUEVA,

*Petitioner-Appellant*,

*v.*

KEITH ANGLIN,

*Respondent-Appellee*,

and

ORENCIO SERRANO,

*Petitioner-Appellant*,

*v.*

ZACH ROECKEMAN,

*Respondent-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 1:11-cv-04310 and 1:11-cv-03327—
**John W. Darrah** and **Joan B. Gottschall**, *Judges*.

ARGUED APRIL 12, 2013—DECIDED JUNE 17, 2013

Before BAUER, POSNER, and FLAUM, *Circuit Judges*.

FLAUM, *Circuit Judge*.  Petitioners Paul Villanueva and Orencio Serrano both pled guilty to unrelated crimes in exchange for a prison sentence agreed to with the state. Several years into those sentences, they learned their pleas also carried a three-year term of mandatory supervised release. They now petition for writs of habeas corpus suggesting the state deprived them of the benefit of their plea bargains in violation of *Santobello v. New York*, 404 U.S. 257 (1971). Separate district courts denied those petitions, and we affirm.

## I.  Background

### A.  Factual Background

#### 1.  Criminal Proceedings

Both Villanueva and Serrano entered guilty pleas to unrelated charges—Serrano to one count of attempted first degree murder and to one count of possession of cannabis, Villanueva to one count of first degree murder. According to Serrano, he pled guilty in exchange for a fourteen-year prison sentence on the attempted murder charge and a consecutive one-year sentence on the possession charge. Villanueva asserts that he pled for a twenty-five year sentence on his murder charge. According to petitioners, the plea agreements made no mention of any term of supervised release even though Illinois imposes a three-year term of mandatory supervised release (MSR) on the murder and attempted murder charges. *See* 730 ILCS 5/5-8-1(d)(1).

At both Serrano's and Villanueva's plea hearings, however, the state judges mentioned the mandatory term of supervised release and obtained defendants' understanding that the law imposed such a term. For example, the state judge told Serrano:

> You understand that [the attempted murder charge] is a Class X felony and it is subject to a possible penalty of incarceration in the penitentiary for a determinant period of time between 6 and 30 years, a fine of up to $25,000 or both, and it's also subject to what's called mandatory supervised release for a period after your release from the penitentiary. Do you understand that?

"Yes," Serrano answered, before pleading guilty and receiving consecutive one- and fourteen-year sentences. The judge asked Serrano if he had any questions; Serrano did not. The state judge made no mention of the MSR term, and the judgment of conviction likewise omitted any reference to the MSR term.[1] Serrano's

---

[1] Illinois law at the time did not require listing the MSR term on the conviction and sentencing order. *See People v. Rinehart*, 943 N.E.2d 698, 706 (Ill. App. 2010) (noting a "trial court could fail to include MSR as part of sentencing and have the error remedied by operation of law"), *vacated in part* 962 N.E.2d 444 (Ill. 2012); *see also People v. Morgan*, 470 N.E.2d 1118, 1120 (Ill. 1984) (noting MSR "attaches by operation of law to sentences imposed upon a trial verdict as well as upon a guilty plea"). Even the language of the statute suggests MSR did not need to be provided for in the sentencing order:

(continued…)

conviction became final when the time for seeking appellate review passed on July 5, 2002.

Villanueva's case proceeded along similar lines. After Villanueva expressed his desire to plead guilty, the state judge told Villanueva:

> First degree murder carries with it a possible penalty of not less than 20 nor more than 60 years in the Illinois Department of Corrections and a period of mandatory supervised release of 3 years.

Villanueva told the state judge he understood these consequences. He also indicated that no one had "promise[d] [him] anything other than what [the] sentence would be, and that is 25 years in the Illinois Department of Corrections[.]"

The court sentenced him "pursuant to . . . the disposition arrived at and agreed to by the parties and the Court [to a term of] 25 years in the Illinois Department of Corrections." During sentencing, the state judge did not mention any term of MSR and the judgment of conviction did not reflect any term of MSR. The court asked Villanueva if he understood his sentence, and

---

[1] (...continued)

"[E]very sentence shall include *as though written therein* a term [of supervised release] in addition to the term of imprisonment." 730 ILCS 5/5-8-1(d) (2004) (emphasis added). After petitioners were sentenced, the General Assembly modified this provision. It now requires that the term of mandatory supervised release be specified in the sentencing order. *See* 2011 Ill. Legis. Serv. P.A. 97-531.

Villanueva indicated he did. His conviction became final on October 21, 2004.

### 2.   State Collateral Review

Serrano and Villanueva learned of the MSR requirement from a prison counselor and another inmate, respectively. This realization prompted both to file pro se petitions for post-judgment relief. Villanueva's petition alleged that he first learned of the MSR requirement on December 15, 2006 and asserted that the MSR term deprived him of "the benefit of his bargain" he made with the state in exchange for his guilty plea. He also relied on *People v. Whitfield*, where the Illinois Supreme Court granted post-conviction relief because the trial court "failed to admonish defendant, as required by [Illinois] Supreme Court Rule 402 and due process, that a three-year MSR term would be added, by operation of law, to the negotiated 25-year sentence." 840 N.E.2d 658, 673 (Ill. 2005). He requested specific performance of the plea agreement through a three-year reduction in the term of imprisonment such that the total length of time he spent in custody of the Illinois Department of Corrections—imprisonment plus MSR—equaled the twenty-five years to which he agreed in the plea. Serrano similarly argued that the MSR term deprived him of "the benefit of the bargain" and made the same request for specific performance. In addition to *Whitfield*, Serrano cited *United States ex rel. Baker v. Finkbeiner* to support his due process claim. 551 F.2d 180 (7th Cir. 1977). He never identified the specific date on which he first learned of the MSR term.

The state courts dismissed both petitions for post-conviction relief and Serrano and Villanueva both appealed. In Serrano's case, the appellate court relied on *Whitfield*, reversed the trial judge, and reduced Serrano's prison term by three years. Villanueva did not fare as well—the appellate court affirmed his denial of post-conviction relief. The state sought review of Serrano's case in the Supreme Court, and Villanueva did in his.

Shortly after these appellate proceedings, however, the Illinois Supreme Court issued *People v. Morris*, in which it concluded that *Whitfield*—the Illinois Supreme Court case on which both Serrano and Villanueva relied—announced "a new rule that does not warrant retroactive application on collateral review." 925 N.E.2d 1069, 1076 (Ill. 2010). The Supreme Court vacated the appellate decisions in both Serrano's and Villanueva's cases and remanded for reconsideration in light of *Morris*.

On remand, neither petitioner could rely on *Whitfield*, which came down after their initial convictions. They reframed their arguments in terms of *Santobello v. New York*, where the United States Supreme Court held that the state must uphold the offers it makes to induce a defendant to plead guilty. 404 U.S. 257 (1971). The appellate courts rejected their arguments on remand, concluding a "defendant cannot avoid *Morris* by relying on *Santobello* instead of *Whitfield*." Both defendants sought review in the Illinois Supreme Court, which denied their petitions for review. The U.S. Supreme Court likewise denied their petitions for certiorari.

### B.  Procedural Background: Federal Habeas Proceedings

Without further recourse in the state system, Serrano and Villanueva petitioned the district court for writs of habeas corpus. *See* 28 U.S.C. § 2254. In Villanueva's case, the district court found the statute of limitations satisfied because it was tolled until he learned of the MSR requirement from the inmate. It dismissed the claim on the merits, though, noting that the U.S. Supreme Court has never identified a due process right to be advised of MSR when entering into a plea agreement. Another district court also dismissed Serrano's petition. It saw no need to address the statute of limitations defense because it denied Serrano's petition on the merits, deploying reasoning similar to the district court in Villanueva's case.

## II.  Discussion

Serrano and Villanueva argue their respective agreements with the state (to plead guilty in exchange for a particular prison term) precluded imposing a term of MSR after their release. They argue their MSR terms, which apply by operation of Illinois statute, constitute a breach of the state's plea agreements in violation of *Santobello*. We can grant a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") if petitioners' custody is contrary to clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). We first examine the state's arguments that petitioners failed to clear AEDPA's procedural hurdles by neither

filing their petitions within a year of the date on which their convictions became final, § 2244(d)(1)(A), nor exhausting state remedies by presenting their federal claims in state court, § 2254(b)(1)(A). We agree Serrano's and Villanueva's petitions were indeed untimely and reject their argument for tolling the statute of limitations. Notwithstanding, they still would have failed on the merits, although they fairly alerted the state courts to the federal nature of their claims.

## A. Serrano and Villanueva Did Not Timely Seek Writs of Habeas Corpus

Petitioners must seek a writ of habeas corpus in federal court within a year of the date on which the state court judgment becomes final (although the limitations period is tolled while a "properly filed" collateral attack is "pending" in state court). 28 U.S.C. § 2244(d)(1)(A), (d)(2). Both Serrano and Villanueva filed their petitions well outside this window. They argue, though—and the district court in Villanueva's case agreed—that the statute was tolled until the "factual predicate of the claim . . . could have been discovered through the exercise of due diligence." § 2244(d)(1)(D). According to petitioners, they did not become aware of the factual predicate for their *Santobello* claims until they learned from the prison counselor and fellow inmate that Illinois law imposed MSR.

The court must consider both the date on which the petitioner discovered the factual predicate of the claim *and* whether the petitioner exercised due diligence in

discovering that information. *Moore v. Knight*, 368 F.3d 936, 939 (7th Cir. 2004). Petitioners' subjective knowledge of the important facts starts the limitations clock, but the clock also starts at the time a reasonable person would have discovered those facts. *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) ("federal statutes use objective indicators as triggers" for statutes of limitations).

Regardless of when Serrano and Villanueva assert they learned of the MSR requirement, they could have learned of it on the day they were sentenced had they used due diligence. In reviewing the range of possible sentences with the petitioners, the state court judges in both cases informed Serrano and Villanueva that their crimes subjected them to a term of mandatory supervised release. Although the state courts did not mention the term of supervised release when they actually handed down the sentences, a reasonably diligent defendant would have, under the circumstances, asked the sentencing judge or his attorney about the mandatory term.

"[D]ue diligence is equivalent to a rule of 'inquiry notice.'" *Clarke v. United States*, 703 F.3d 1098, 1100 (7th Cir. 2013). The judges' warning that petitioners' pleas subjected them to mandatory supervised release was all the notice they needed. At that point, they should have asked the judge if MSR applied to them. If that was not enough, the term of supervised release is imposed by operation of statute, 730 ILCS 5/5-8-1(d)(1), so petitioners' lawyers were under a particular obligation to inform the judge that MSR was off the table if the

state had indeed bargained it away. Arguably the law-
yers' failure to inquire could form the basis of an ineffec-
tive assistance claim. *See Lafler v. Cooper*, 132 S. Ct. 1376,
1384 (2012); *Clarke*, 703 F.3d at 1100. Petitioners
raise no such claim here. And without it the lawyers'
possible errors in alerting the judge—and uncovering
the factual bases for these habeas petitions—are imputed
to petitioners.

Indeed, had anyone inquired with the sentencing
judges this litigation could have been altogether
avoided. The parties could then have fleshed out
whether MSR was part of their plea bargains. If it was
and petitioners would not have accepted a deal that
included it, they could have withdrawn their guilty
pleas and continued negotiating or stood trial. Given
the potential remedies available under *Whitfield*—a
three-year reduction in petitioners' prison terms—
defense counsel have every incentive to let ambiguities
lie and then seek a reduction of the prison sentence
under *Santobello* later.

Thus, we disagree with the district court's conclusion
that Villanueva could not have discovered the terms of
his sentence any earlier than he did. As for Serrano,
he argues the state trial judge admitted during the
post-conviction hearing that the court never told him
his conviction carries a mandatory supervised release
period of three years. That assertion, though undis-
puted, is irrelevant. The time Serrano should have deter-
mined whether MSR applied matters, and that occurred
when the judge told him during his plea colloquy that

he was "subject to what's called mandatory super-vised release for a period after your release from the penitentiary." This statement put Serrano on inquiry notice and started the statute of limitations clock.

Finally, Serrano argues that this approach to the statute of limitations requires resolving the case on the merits. He essentially asserts that the limitations period did not start at the sentencing hearing unless we determine Serrano knew at the time of his sentencing that MSR was part of his sentence, which is the heart of his claim. Serrano confuses the critical question. We can assume Serrano did not *know* his sentence included MSR. For limitations purposes, the question is whether, given the state judge's statements during the plea and sentencing hearing, he *could* have known had he exercised due diligence. Thus, we need not consider the ultimate merits of the claim to determine whether Serrano has satisfied the statute of limitations.

## B. Villanueva and Serrano Have Not Procedurally Defaulted Their *Santobello* Claims

Petitioners' untimely petitions foreclose habeas relief, but even had they petitioned within the statutory period (or we accept their due diligence arguments), their claims still fail on the merits. Before reaching that analysis, though, petitioners must clear additional procedural hurdles. The state raises two arguments that petitioners have procedurally defaulted their claims. First, it argues that Villanueva failed to exhaust his state remedies by failing to present his *Santobello*

claim at each level of the state proceedings. Second, the state argues that the state courts dismissed petitioners' claims on independent and adequate state grounds.

### 1.  Petitioners Presented Their Respective *Santobello* Claims at Each Level of State Review

The State first accuses Villanueva of presenting his *Santobello* claim for the first time on remand from the Illinois Supreme Court's vacatur of the first appellate ruling. A petitioner must raise his claims below "to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue." *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992) (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam)). This requirement advances comity by allowing state courts the first opportunity to correct errors in the state court system. No magic formula exists for presenting a federal constitutional claim, nor do we "require a hypertechnical congruence between the claims made in the federal and state courts." *Anderson v. Benik*, 471 F.3d 811, 814-15 (7th Cir. 2006). The factual and legal substance of the habeas petition must be the same as what was raised in the state. Several factors assist us in this inquiry: whether the petitioner (1) relied on pertinent federal cases employing constitutional analysis; (2) relied on state cases applying constitutional analysis to a similar factual situation; (3) asserted the claims in terms particular to a specific constitutional right; or (4) alleged a pattern of facts well within the mainstream of constitutional litigation. *Verdin*, 972 F.2d at 1473-74.

At the outset, the state acknowledges that Serrano satisfied this requirement. Unlike Villanueva, Serrano alerted the state court to the federal constitutional dimensions of his claim by citing Seventh Circuit cases applying *Santobello* in his initial petition for post-conviction relief. And despite the states protestations otherwise, Villanueva also presented the same constitutional claim in state court notwithstanding his citation to different authority. Villanueva relied primarily on *Whitfield*, which applied a constitutional analysis to a factual situation similar to *Santobello*. In fact, *Whitfield* heavily cited *Santobello* and other federal cases (both Supreme Court and the Seventh Circuit) finding due process violations in the government's failure to adhere to its end of a plea agreement. 840 N.E.2d at 666-70 (citing various federal cases). The Illinois Supreme Court has itself recognized that *Whitfield* "was rooted in the United States Supreme Court's decision in *Santobello v. New York*." *Morris*, 925 N.E.2d at 1076.

The state unfairly suggests Villanueva relied on *Whitfield* to argue only that the court inadequately admonished him under Illinois Supreme Court Rule 402. This argument does not give effect to Villanueva's repeated references to *Whitfield* or the relationship between *Whitfield* and *Santobello*. Nor does it fairly read the complaint, another one of the relevant factors. Villanueva used language specific to the type of due process constitutional claim he raises: he pled guilty "in exchange for a 'SPECIFIC' sentence of 25 years" and was "denied the 'BENEFIT OF HIS BARGAIN.' " (emphases

in original). Thus, Villanueva's reliance on *Whitfield* offers plenty to alert the state court to the federal nature of his claims. *Anderson*, 471 F.3d at 814-15; *see also Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (noting state court litigant can satisfy presentment requirement by citing "a case deciding such a claim on federal grounds"); *Verdin*, 972 F.2d at 1475 (noting if "state cases rest on federal constitutional grounds, they must be accepted on that basis by the habeas court").

The state also asserts Villanueva "chang[ed] his constitutional theory" on remand from the Illinois Supreme Court because he argued that "his petition also supports a *Santobello* claim independent of . . . *Whitfield*." However "'a mere variation in legal theory' does not automatically lead to a finding of failure to exhaust." *Sweeney v. Carter*, 361 F.3d 327, 333 (7th Cir. 2004). A petitioner may thus "reformulate [his] claims so long as the substance of the claim remains the same." *Id.* That is what Villanueva did. Throughout the entire course of the litigation, he has argued that he did not receive the benefit of his plea bargain in violation of the Due Process Clause. He reformulated his claim from *Whitfield* to *Santobello* after *Morris*, which blocked his use of *Santobello*. *Whitfield* subsumed *Santobello* and had offered a path of lesser resistance toward obtaining relief. Villanueva had no reason to specifically argue *Santobello* (as opposed to or in addition to arguing *Whitfield*) until the *Morris* decision removed *Whitfield* from his quiver of arguments.

### 2. The State Courts Did Not Reject the *Santobello* Claims on Independent and Adequate State Law Grounds

Rooted in the constitutional prohibition on issuing advisory opinions and the federalism principles of comity and respect for state law, federal courts generally cannot review the merits of constitutional claims decided on other state law grounds. Such grounds must be both independent from the federal constitutional claim and adequate such that they will not completely prohibit federal court review of federal claims. The state argues that *Morris*'s labeling of *Whitfield* as a new rule without retroactive application presented an independent and adequate state procedural rule that prevents federal review.

We must evaluate petitioners' claims as *Santobello* claims, not *Whitfield* claims. It is true that the state courts' dismissal of the *Whitfield* claims as non-retroactive under *Morris* would operate as an independent and adequate resolution under state law. The claims that state courts may entertain on petitions for post-conviction relief are squarely a matter of state law, and the Illinois courts are free to define the scope of their post-conviction proceedings. *See People v. Flowers*, 561 N.E.2d 674, 681-83 (Ill. 1990) (noting *Teague v. Lane* addressed questions under federal law but incorporating its test into Illinois law for persuasive reasons).

As we just discussed, however, petitioners presented *Santobello* claims in addition to *Whitfield* claims. The state courts did not analyze these two claims separately.

Instead, they concluded that "*Whitfield* relied on *Santobello*" and the "defendants cannot avoid *Morris* by relying on *Santobello* instead of *Whitfield.*"[2] *Whitfield* and *Santobello* have similar bases. But *Morris*'s non-retroactivity determination can apply only to *Whitfield*—while *Whitfield* came down after the petitioners' sentences, *Santobello* has been on the books for decades. *Morris* disposed of petitioners' *Whitfield* claim, but *Whitfield* alone was the new rule. Disposing of that claim did not absolve the state courts of responsibility to consider and rule on the *Santobello* claim. And when state courts do not address federal issues, federal courts are free to consider them—unshackled from the strictures of AEDPA deference—in habeas petitions.

## C.  Even Under De Novo Review, Petitioners Are Not Entitled to Habeas Relief Under *Santobello*

We apply deferential review under AEDPA only when the state courts have offered something to which we can defer. As we just discussed, the state court did not adjudicate the merits of the *Santobello* claims, so we are free to dispose of the petition through de novo review "as justice and law require." *Canaan v. McBride*, 395 F.3d 376, 383 (7th Cir. 2005).

---

[2] This language came from Villanueva's case. The state court in Serrano's case concluded similarly, explaining that Serrano's reliance on *Santobello* "does not avoid the effect of *Whitfield*, and, in turn, its prospective application under *Morris*."

Under *Santobello*, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262. Thus, to obtain relief under *Santobello*, the prosecution must make a promise that induces the defendant to plead guilty. This promise need not always be explicit, *see United States v. Bowler*, 585 F.2d 851, 853-54 (7th Cir. 1978) (finding implicit promise in "ambiguous statement" by government in written plea agreement), but it must nevertheless be made. As *United States v. Jordan* explained, "*Santobello* [does not] place an affirmative duty on the prosecution to discuss all possible ramifications of a defendant's guilty plea. Rather, [it] prohibit[s] false representations and mandates compliance with promises made." 870 F.2d 1310, 1316 (7th Cir. 1989).[3]

Petitioners' claims fail because they offer nothing suggesting the state promised that the MSR term would not attach to the end of their sentence by operation of stat-

---

[3] Both the district courts in this case and the state relied heavily on *Lockhart v. Chandler*, 446 F.3d 721 (7th Cir. 2006). *Lockhart* was a failure-to-admonish case, a claim petitioners do not raise here. It denied a habeas petition because "no Supreme Court precedent [exists] for the proposition that a defendant must be advised of a term of MSR at the time he attempts to enter a plea of guilty." *Id.* at 724. Here, we are determining whether the prosecutor promised MSR would not apply to petitioners' prison sentence, not whether the trial court informed them it would. The inquiries are distinct. *Lockhart* also applied AEDPA deference inapplicable here.

ute. They rely solely on the procedural posture of the case and argue that their petitions for relief allege they were promised a specific sentence consisting only of a term of imprisonment. However, the transcripts offer no evidence of a promise, implicit or explicit, to waive the MSR term. In fact, these transcripts support just the opposite conclusion that the plea agreement did contemplate—even if it did not explicitly say so—the normal statutory term of MSR. Immediately before Serrano pled guilty, he was told his conviction is "subject to what's called mandatory supervised release for a period after [his] release from the penitentiary."[4] Villanueva pled guilty after the same admonition, which informed him "[f]irst degree murder carries . . . a period of mandatory supervised release of 3 years." Although Illinois Supreme Court Rule 402 mandates these admonitions and the sentencing judge must describe the possible sentence regardless of what the defendant and prosecutor have agreed upon, the reference to "mandatory" supervised release suggests that MSR is part of the sentence. Characterizing

---

[4] Petitioners attempt to characterize this statement as describing a "possible" penalty. Both judges use that phrase but only in the context of describing the term of imprisonment. For example, Serrano's judge explained, "a Class X felony . . . is subject to a possible penalty of incarceration in the penitentiary for a determinant period of time between 6 and 30 years, and a fine of up to $25,000 or both, and it's also subject to [MSR]." The MSR discussion forms a separate clause from the part of the sentence containing "possible."

"*mandatory* supervised release" as a "*possible* penalty" is incongruent.

Tellingly, neither petitioner reached out to the individuals most likely to know the content of the plea negotiations: Serrano's or Villanueva's defense counsel or the assistant state's attorneys that prosecuted them. Because no written agreement exists and the actual plea is not evident from the transcript, the lawyers that negotiated this bargain are the best evidence we could have of its composition.

This failure leaves us with Serrano's and Villanueva's bare assertions in their state and federal petitions that "they pled guilty in exchange for" their specific sentences. They received these promises: Serrano was sentenced to fourteen years out of a possible thirty and Villanueva to twenty-five out of a possible sixty. To succeed on their *Santobello* claims they must prove the government *also* promised that the MSR term would not attach. They present nothing to this end. Instead, Serrano and Villanueva were confronted with a range of sentences for their crimes: a minimum and maximum number of years as well as the mandatory term of supervised release. The government promised to respectively cut sixteen and thirty-five years off Serrano's and Villanueva's maximum sentences "in exchange for" their guilty plea. Petitioners do not assert that the government also promised to prevent the MSR term from attaching.[5]

---

[5] Central to the petitioners' claim is the implicit assertion that their exchange with the state—reduced sentences in exchange

(continued...)

To be sure, several old cases in which we granted the writ are similar to this case. These cases mention the defendants' bargain with the state, but we were more concerned about the deficiencies in the admonitions,

---

[5] (...continued)
for guilty pleas—comprises the exclusive terms of their sentences. No other terms can exist (like MSR). Some support for this argument exists in traditional contract law. If a car seller says "I'll give you this car for $10,000" and the buyer gives him the cash, the seller cannot later demand the buyer trade in his used car. Petitioners suggest that the state said "twenty-five years for a guilty plea," Villanueva agreed, and the state later tried to add a term of MSR. But that is not what happened. The starting points for negotiations were the two required components of petitioners' sentences: a sentence (which had minimum and maximum terms) and a term of MSR. Petitioners then negotiated away part of the possible prison time, but did not negotiate regarding the other term. Returning to the car example, imagine the seller's policy required trade-ins and the car's price tag said "$10,000 plus trade in." If the buyer said, "$10,000 is a lot, how about $5,000," the buyer could not argue that the agreement precludes requiring the trade-in—the starting point for the negotiation was a price plus a trade-in, and the parties only negotiated with respect to one term. That is what happened here—the starting point was prison time plus MSR, and the negotiation concerned only the prison term. Now, had the state tried to impose something that was not mandatorily part of petitioners' sentences, like 1,000 hours of community service, that would violate *Santobello*. Community service was never a term of the sentence just like the first car example where the trade-in was not part of the original deal.

which in those cases made no mention of MSR. In each case, the defendant ultimately pled guilty without any mention of MSR from the sentencing judge. In *United States ex rel. Ferris v. Finkbeiner*, the state court "misinformed" the defendant by telling him "I am sure if you serve the full ten years that would be the end of it" in response to the defendant's inquiry about MSR. 551 F.2d 185, 186 (7th Cir. 1977). In *United States ex rel. Miller v. McGinnis*, we granted the writ because "the trial court failed to inform Miller of the three year MSR term" among other considerations including that the defendant tried to withdraw his plea days later. 774 F.2d 819, 823 (7th Cir. 1985). Finally, in *United States ex rel. Baker v. Finkbeiner*, the petitioner argued that, in the absence of an MSR admonition, "his guilty plea was involuntary because he did not know of the mandatory parole term at the time he agreed to the plea." 551 F.2d 180, 182 (7th Cir. 1977).

These cases share a common thread absent here. Those petitioners argued their pleas were involuntary because they were not told and did not know MSR was a consequence of their plea. *Brady v. United States* requires that defendants know the "direct consequences" of their pleas before they can enter them voluntarily. 397 U.S. 742, 755 (1970). Thus, in those cases we concluded the petitioners' pleas were involuntary because they were unaware that the MSR term was a consequence (although failure-to-admonish claims might fail since Congress passed AEDPA and our holding in *Lockhart*, 446 F.3d at 724). Serrano and Villanueva, on the other hand, acknowledge they understood this consequence. *See also* Ill. Sup. Ct. R. 402. Instead, they argue that the

state reneged on its promise not to impose the term under *Santobello*. The distinction is subtle and might not matter in many cases—if the defendant thought his deal would not include a term, he could not know that it would be a consequence of his plea. But the distinction is important in these cases because it controls what the petitioners must show to prove their claims. The parties in the cited cases proved they did not think MSR was part of their plea through the transcripts. Petitioners' *Santobello* broken-promise claims, on the other hand, turn on what was in the agreement. Their claims fail because they cannot show the agreements precluded MSR.

## III. Conclusion

Serrano and Villanueva filed their petitions in federal court too long after their judgments became final, and for this reason we AFFIRM the district courts' denial of their petitions. Notwithstanding, their claims would have failed on the merits.