RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0238p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

THOMAS CHARLES CRANGLE,

        *Petitioner-Appellant,*

  *v.*

BENNIE KELLY, Warden,

        *Respondent-Appellee.*

No. 14-3447

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:13-cv-00842—Jack Zouhary, District Judge.

Argued: April 19, 2016

Decided and Filed: September 22, 2016

Before: SILER, SUTTON, and STRANCH, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** D. Bruce La Pierre, Nicole L. Pelletier, WASHINGTON UNIVERSITY SCHOOL OF LAW, St. Louis, Missouri, for Appellant. Stephanie L. Watson, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** D. Bruce La Pierre, Nicole L. Pelletier, WASHINGTON UNIVERSITY SCHOOL OF LAW, St. Louis, Missouri, Brian C. Walsh, BRYAN CAVE LLP, St. Louis, Missouri, for Appellant. Stephanie L. Watson, Paul Kerridge, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. Thomas Charles Crangle, Grafton, Ohio, pro se.

     The court delivered a PER CURIAM opinion. STRANCH, J. (pp. 11–17), delivered a separate concurring opinion.

---

**OPINION**

---

PER CURIAM.  In 2013, Thomas Crangle filed a habeas petition in federal court under 28 U.S.C. § 2254.  His petition included three ineffective assistance of counsel claims.  He also alleged that his plea was constitutionally invalid because it was not made knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences.  *See United States v. Ruiz*, 536 U.S. 622, 629 (2002).  Specifically, he argued that the state trial court misrepresented his maximum sentence by informing him that he would not be subject to post-release control—even though post-release control was statutorily mandated.  *See Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009).  The federal district court dismissed Crangle's petition as untimely.

On appeal, Crangle contends that, because the state-court order imposing post-release control was a new judgment, his petition was timely under 28 U.S.C. § 2244(d)(1)(A).  He also argues that his petition was timely under § 2244(d)(1)(D).  We conclude that the state-court order was a new judgment that reset AEDPA's one-year statute of limitations and thus REVERSE the federal district court's order and REMAND for further proceedings.  We do not reach Crangle's arguments with regard to § 2244(d)(1)(D).

**I. BACKGROUND**

In November 2006, an Ohio grand jury indicted Thomas Crangle for rape of a minor, kidnapping, and gross sexual imposition.  Crangle initially pled not guilty.  In February 2007, he agreed to plead guilty to one count of rape with a recommended sentence of life imprisonment and parole eligibility after ten years.  In signing the plea agreement, Crangle acknowledged, "I have been informed that if I am imprisoned, after my release from prison I [May__ or Will__] be supervised under post-release control, R.C. 2967.28, which could last up to 5 years," with a checkmark entered after "Will."  At the sentencing hearing, however, the state court judge and Crangle's own attorney incorrectly informed him that he would be subject to "straight parole"

and not post-release control.  The sentencing entry also did not indicate that Crangle would be subject to post-release control, despite the conflicting provision in his plea agreement.

Crangle filed a notice of appeal in December 2007.  On direct appeal, he argued that his counsel provided ineffective assistance by encouraging him to plead guilty rather than no contest to the rape charge.  The Ohio court of appeals upheld the trial court's judgment on November 5, 2008.  Because Crangle did not appeal to the Ohio Supreme Court, his conviction became final 45 days later, on December 20, 2008.

### A.    Crangle's state challenges to his conviction and sentence.

On June 16, 2010—over a year after Crangle's conviction became final—the Ohio Supreme Court decided *State ex rel. Carnail v. McCormick*, 126 Ohio St. 3d 124, 931 N.E.2d 110 (Ohio 2010).  In *Carnail*, the trial judge sentenced the defendant to life in prison with possibility of parole after ten years, but "failed to include in the sentencing entry any term of postrelease control." *Id.* at 124, 931 N.E.2d at 111–12.  On appeal, the defendant argued that his sentence was "void because it did not include postrelease control for his rape convictions." *Id.* at 125, 931 N.E.2d at 112.  A majority of the Ohio Supreme Court agreed, holding that the post-release control "statute's plain, unambiguous language expressly requires the inclusion of a mandatory postrelease-control term of five years for each prison sentence for felonies of the first degree and felony sex offenses"—even for indefinite or life sentences.  *Id.* at 126–27, 931 N.E.2d at 113–14.  The Court thus "grant[ed] a writ of mandamus to compel [the trial judge] to issue a sentencing entry that complie[d] with the postrelease-control provisions." *Id.* at 131, 931 N.E.2d at 117.

On August 1, 2010, Crangle obtained a copy of *Carnail* from the prison library.  Four days later, he filed *pro se* motions to withdraw his guilty plea and, based on *Carnail*, "to sentence him to a lawful sentence, properly imposing post-release control."  He argued that his "guilty plea was not knowingly, intelligently, and voluntarily[] made" because "he was not . . . correctly advised of post-release control sanctions."

On November 16, 2010, the trial court denied Crangle's motion to withdraw his guilty plea.  It also "order[ed] a correction to the judgment of conviction be filed NUNC PRO

TUNC . . . to include five (5) years mandatory post release sanctions." Whereas Crangle's plea agreement stated that the post-release control could last "up to 5 years," the new judgment of conviction provided that Crangle "***shall*** be supervised on post-release control by the Adult Parole Authority for a ***mandatory*** period of ***5 years*** after being released from prison." It also set out sanctions that could be imposed if Crangle "violate[d] the terms and conditions of post-release control." The order was backdated to Crangle's initial sentencing in November 2007.

Crangle appealed the denial of his motion to withdraw his guilty plea. In a split decision, the court of appeals affirmed in November 2011. The Ohio Supreme Court denied leave to appeal on April 4, 2012.

In July 2012, Crangle filed a *pro se* delayed application to reopen his direct appeal, arguing that his delay should be excused because he could not have discovered the sentencing error before *Carnail*. The court of appeals held that Crangle "ha[d] not demonstrated good cause for his untimely filing" and denied Crangle's application to reopen. The Ohio Supreme Court denied leave to appeal in January 2013.

In March 2013, Crangle filed a *pro se* motion in the Ohio Supreme Court for leave to file a delayed appeal from the November 2008 decision upholding his conviction. The Ohio Supreme Court denied this motion in May 2013.

## B. Crangle's federal habeas petition.

Crangle placed a federal habeas petition in the prison mailing system on March 28, 2013, which was docketed on April 15, 2013. He alleged that he had received ineffective assistance of counsel under the Sixth and Fourteenth Amendments because: his trial counsel had advised him to enter a plea of guilty rather than no contest; his trial counsel had misinformed him about whether post-release control would be imposed; and his appellate counsel had failed to raise the sentencing error on direct appeal. He also alleged that the trial court violated his due process rights under the Fifth and Fourteenth Amendments by misrepresenting his sentence and accepting his guilty plea.

In March 2014, the federal district court dismissed Crangle's habeas petition as untimely. It held that Crangle's "conviction became final on December 20, 2008, when [he] failed to file a notice of appeal with the Ohio Supreme Court within 45 days of the state appellate court decision affirming his conviction" and that "AEDPA's one-year statute of limitations expired on December 20, 2009." It also concluded that the state court's November 19, 2010 *nunc pro tunc* order was not "a new judgment of sentence that restart[ed] the statute of limitations under 28 U.S.C. § 2244(d)(1)(A)," and that Crangle could have discovered the factual predicate of his federal habeas claims before August 2010, thus precluding a new start date under 28 U.S.C. § 2244(d)(1)(D).

In March 2015, the motions judge granted a certificate of appealability, holding that reasonable jurists could debate whether Crangle's second, third, and fourth claims for relief— that is, the claims involving the imposition of post-release control—were timely under § 2244(d)(1)(D). The motions judge also held, based on our unpublished decisions in *Mackey v. Warden*, 525 F. App'x 357 (6th Cir. 2013) (per curiam), and *Eberle v. Warden*, 532 F. App'x 605 (6th Cir. 2013), that reasonable jurists could not debate the district court's conclusion that the November 2010 *nunc pro tunc* order did not restart the statute of limitations under § 2244(d)(1)(A).

In December 2015, we decided *King v. Morgan*, 807 F.3d 154 (6th Cir. 2015). There, we emphasized that a new sentence leads to a "new judgment [that] normally resets the statute-of-limitations clock," *id.* at 159, and that this new judgment allows a prisoner to attack both the new sentence and the undisturbed original conviction without any possibility of facing the second or successive limits, *id.* at 157. In light of *King*, we asked the parties to file supplemental briefing on whether the November 2010 *nunc pro tunc* order was a new judgment that reset the statute of limitations clock under § 2244(d)(1)(A). We now hold that it was.

## II. ANALYSIS

We review *de novo* the district court's decision to deny a 28 U.S.C. § 2254 petition for untimeliness. *Board v. Bradshaw*, 805 F.3d 769, 771 (6th Cir. 2015).

The statute of limitations governing Crangle's § 2254 petition provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). This limitations period runs from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* Crangle argues that the November 2010 *nunc pro tunc* order that imposed post-release control was a new sentence that resets the limitations clock under § 2244(d)(1)(A).

In *Magwood v. Patterson*, 561 U.S. 320 (2010), the Supreme Court considered whether a new sentence "was an unreviewable 'second or successive' challenge under 28 U.S.C. § 2244(b)." *Id.* at 323. The Court held that the defendant's "resentencing led to a new judgment," which meant that a challenge to the new sentence was not second or successive. *Id.* at 331. The defendant in *Magwood* sought only to challenge his new sentence, however, and the Court declined to resolve whether its "reading of § 2244(b) would allow a petitioner . . . to file a subsequent application challenging not only his resulting, new sentence, but also his original, undisturbed conviction." *Id.* at 342.

We took that question up in *King v. Morgan*, 807 F.3d 154 (6th Cir. 2015), where we held that "a habeas petitioner, after a full resentencing and the new judgment that goes with it, may challenge his undisturbed conviction without triggering the 'second or successive' requirements." *Id.* at 156. "As a matter of custom and usage," we observed, "a judgment in a criminal case 'includes both the adjudication of guilt and the sentence.'" *Id.* 157–58 (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993)). Thus, "[e]ven when the only change in the

state-court proceeding relates to the sentence," the court must issue a new judgment that both imposes the modified sentence and reinstates the conviction. *Id.* at 158. And because "the existence of a new judgment is dispositive in resetting the 'second or successive' count . . . the existence of a new judgment permits a new application to attack the sentence, the conviction, or both." *Id.* (quoting *Magwood*, 561 U.S. at 338) (internal quotation marks omitted).

Although *King*'s holding was limited to second or successive petitions, in evaluating "the net effect of [its] decision," the court noted that the decision "may allow more habeas petitions" because "[t]he entry of a new judgment normally resets the statute-of-limitations clock" under § 2244(d)(1)(A). *Id.* at 159. We agree with the *King* court's analysis. The interpretation of "judgment" in *Magwood* and *King* applies with equal force to § 2244(d)(1)(A) and § 2254(a). Accordingly, because "[t]he sentence is the judgment," *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (quotation omitted), a new sentence not only permits a challenge to either the new sentence or the undisturbed conviction, but also restarts AEDPA's one-year window to challenge that judgment.

The State points to *Mackey v. Warden*, 525 F. App'x 357 (6th Cir. 2013), where we held that, when a limited resentencing imposed only post-release control, it reset the one-year clock only if the petitioner requested "relief [from the] imposition of post-release controls." *Id.* at 362–63. But *Mackey* is no longer good law after *King*. In *King*, we held that, after a new sentence, a prisoner can bring a new petition attacking the underlying conviction as well as the new judgment. 807 F.3d at 157–58. *King* thus abrogated *Mackey*'s statement that, when a resentencing is limited in scope, a prisoner can only challenge the new part of the sentence. *Magwood* and *King* likewise abrogated *Bachman v. Bagley*, 487 F.3d 979, 983 (6th Cir. 2007), where we held that a sexual predator designation that was imposed after the original judgment restarted the one-year clock only for a challenge to the sexual predator designation.[1]

Our analysis is consistent with a line of cases in which a limited resentencing *benefits* the prisoner, such as in a sentence-reduction proceeding under 18 U.S.C. § 3582(c) or Criminal Rule

---

[1]The State also relies on *Eberle v. Warden*, 532 F. App'x 605 (6th Cir. 2013). But *Eberle did not* restart the limitations clock because the state-court action *helped* Eberle: the state court vacated a five-year term of post-release control that should not have been imposed in the first place. *Id.* at 609–110.

35(b). Such sentence modifications, federal law provides, do not disturb the underlying initial judgment, which continues to "constitute[] a final judgment." 18 U.S.C. § 3582(b). As several other courts of appeals have noted, such "a reduced sentence [is] not a new one." *United States v. Jones*, 796 F.3d 483, 485 (5th Cir. 2015) (§ 3582(c)); *see, e.g., White v. United States*, 745 F.3d 834, 836–37 (7th Cir. 2014) (§ 3582(c)); *United States v. Olvera*, 775 F.3d 726, 729 (5th Cir. 2015) (Rule 35(b)); *Murphy v. United States*, 634 F.3d 1303, 1309 (11th Cir. 2011) (Rule 35(b)) (collecting cases); *see also Reichert v. United States*, 101 F. App'x 13, 14 (6th Cir. 2004) (Rule 35(b)). A new, worse-than-before sentence, by contrast, amounts to a new judgment. *See Burton*, 549 U.S. at 156–57.

That segues to the final question in this appeal: Did the November 2010 *nunc pro tunc* order effect a new, worse-than-before sentence? The State argues that it did not. At minimum, the State contends, Crangle must serve five years of parole—that is, the entire length of post-release control—and supervision under parole is no different from supervision under post-release control. Thus, the State argues, because post-release control is no different from parole, Crangle's sentence after the November 2010 *nunc pro tunc* order was substantively the same as his sentence before. The November 2010 *nunc pro tunc* order did not, in other words, effect a new judgment; it effected the same judgment by a different name.

We disagree. Post-release control materially increases the potential restrictions on Crangle's liberty for at least two reasons. First, upon the prisoner's release to post-release control, the parole board must impose at least one post-release control sanction "to apply during the prisoner's period of post-release control." Ohio Rev. Code § 2967.28(D)(1). These are drawn from Ohio Revised Code §§ 2929.16–.18,[2] which authorize a wide variety of sanctions, including community service, residential restrictions, curfews, and fines. Parole does not appear to have the same statutory requirement.[3] *See* Ohio Rev. Code § 5149.01–.12; *id.* § 2967.02. Additionally, while both parolees and releasees—the statutory term for persons on post-release

---

[2]*See* Ohio Dep't of Rehab. & Corr., No. 105–PBD–08, *Post Release Control Screening and Assessment* 2 (2015).

[3]The State notes that the parole board may place a parolee in a community-based correctional facility or jail for *violating* parole, but it does not point to any provision authorizing the parole board to impose these residential sanctions upon release.

control[4]—may be required to reside in a "halfway house" upon release, it appears that only releasees can be required to reside in a "community-based correctional facility" or a "jail." That is a material change in conditions. *See* Ohio Rev. Code § 2967.14 (providing that parole board may require both parolees and releases "to reside in a halfway house or other suitable community residential center" upon release); *id.* § 2967.28(D) (authorizing parole board to impose residential sanctions on releasees upon release); *id.* § 2929.16(A) (defining residential sanctions to include a "[a] term of up to six months at a community-based correctional facility" and " a term of up to six months in a jail").

Second, releasees that re-offend after completing post-release control may be subject to a collateral consequence that parolees avoid. When a parolee completes parole, Ohio law directs the parole board to issue a certificate of final release. *See* Ohio Rev. Code § 2967.16(A). When a releasee completes post-release control, Ohio law not only directs the parole board to issue a certificate of final release, but also to "classify the termination of post-release control as favorable or unfavorable depending on the offender's conduct and compliance with the conditions of supervision." *Id.* § 2967.16(B)(1); *see also* Ohio Admin. Code § 5120:1–1–42(A). Ohio law provides that an unfavorable "[d]esignation shall be considered as a relevant factor in sentencing . . . if the offender is convicted of a felony offense subsequent to the completion or termination of the period of post-release control." Ohio Admin. Code § 5120:1–1–42(A); *see also* Ohio Rev. Code § 2929.12(D)(1) (providing that "[t]he sentencing court shall consider" whether the offender was "unfavorably terminated from post-release control for a prior offense"). Thus, post-release control supervision exposes an inmate to the possibility of an unfavorable designation, which in turn exposes the inmate to the possibility of greater punishment if he or she reoffends. That, too, is a material difference in Crangle's conditions of confinement.

---

[4]The Ohio Revised Code defines parolee as "any inmate who has been released from confinement on parole by order of the adult parole authority" and "who is under supervision of the adult parole authority and has not been granted a final release." Ohio Rev. Code § 2967.01(I). It defines "releasee" as "an inmate who has been released from confinement pursuant to section 2967.28 of the Revised Code"—that is, the post-release control provision of the Ohio Revised Code—"under a period of post-release control that includes one or more post-release control sanctions." *Id.* § 2967.01(J). The State notes that one administrative regulation defines "releasee" to include persons on either parole or post-release control. *See* Ohio Admin. Code § 5120:1–1–01(F). Be that as it may, here we are interpreting statutory provisions, and we must therefore rely on statutory definitions.

The State has no answer to these arguments.  Instead, it attempts to sidestep this conclusion by seizing on the fact that the November 2010 order is labeled "*nunc pro tunc*."  The phrase "*nunc pro tunc*" means "now for then" and "refers to situations in which the court's records do not accurately reflect its actions." *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995) (citation omitted).  *Nunc pro tunc* orders are customarily used only "to correct erroneous records," not to "revise the substance of what transpired or to backdate events." *Id.*  If the November 2010 *nunc pro tunc* order merely corrected a record to accurately reflect the court's actions, it would not be a new sentence that resets the statute of limitations under § 2244(d)(1)(A).

But that's not what happened here.  At sentencing, the trial court told Crangle that he would not be subject to post-release control and entered judgment accordingly.  The later *nunc pro tunc* order walked back the trial court's statement, imposed post-release control, and reworded Crangle's sentence.  That is not merely the correction of a clerical error.  No matter the label, the November 2010 order changed the substance of his sentence—and thus amounted to a new judgment.  A state court's decision to affix the label *nunc pro tunc* to an order does not control the federal questions whether the order changes his conditions of confinement.

Because the November 19, 2010 *nunc pro tunc* order created a new sentence, it was a new judgment that reset the one-year statute of limitations to file a habeas corpus petition.  Under 28 U.S.C. § 2244(d)(2), the statute of limitations was tolled from the date Crangle received notice of the *nunc pro tunc* order to the date when he received notice of the Ohio Supreme Court's decision to deny leave to appeal.  The Ohio Supreme Court denied leave to appeal on April 4, 2012 and Crangle placed his federal habeas petition in the prison mailing system on March 28, 2013—that is, within one year.  His petition was therefore timely.

### III.  CONCLUSION

For the foregoing reasons, we REVERSE the district court's order denying Crangle's habeas petition for untimeliness and REMAND for further proceedings.  Because Crangle's petition was timely under § 2244(d)(1)(A), we do not reach his arguments regarding § 2244(d)(1)(D).

---

## CONCURRENCE

---

STRANCH, Circuit Judge, concurring.   I concur with the lead opinion in this case. I write separately to address Crangle's argument that under the Supreme Court's decision in *Johnson v. United States*, 544 U.S. 295 (2005), the November 2010 *nunc pro tunc* order is a factual predicate that resets the limitations period under § 2244(d)(1)(D).   I think the order is a factual predicate and provides another avenue of relief to Crangle.

### A. *Johnson*'s interpretation of § 2244(d)(1)(D).

Section 2244(d)(1)(D) provides that the one-year limitations period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."   This provision is most often invoked when a habeas petitioner obtains previously undiscovered evidence.   In *Johnson*, however, the Supreme Court held that a vacatur order may also qualify as a factual predicate.   544 U.S. at 302.   Because *Johnson* is the main guidepost, I begin there.

The petitioner in *Johnson* had pled guilty to distributing cocaine in violation of federal law.   *Id.* at 298.   Based on two prior state convictions, the federal district court judge imposed the career offender enhancement under § 4B1.1 of the Guidelines Manual.   *Id.* at 298.   The defendant appealed his sentence, arguing that one of his two predicate state convictions was invalid.   *Id.* at 298-99.   The Eleventh Circuit affirmed.   *Id.* at 299.

The one-year deadline to file a federal habeas petition passed.   Johnson then petitioned for a writ of habeas corpus in state court, claiming his failure to knowingly waive his right to counsel invalidated his guilty pleas in seven cases—one of which had served as a predicate conviction for the career offender enhancement.   *Id.* at 300–01.   The state court ultimately entered an order of vacatur, reversing all seven convictions.   *Id.* at 301.   Johnson then moved *pro se* under 28 U.S.C. § 2255, "claim[ing] his motion was timely because the order vacating the state judgment was 'new evidence' not previously discoverable, and so the trigger of a renewed limitation period."   *Id.* at 301.   The federal district court denied the motion as untimely, the

Eleventh Circuit affirmed, and the Supreme Court granted certiorari to determine "whether vacatur of a prior state conviction used to enhance a federal sentence can start the 1-year limitation period under the fourth alternative of the § 2255 rule." *Id.* at 302.

The Supreme Court held that "the state-court vacatur is a matter of fact for purposes of the limitation rule." *Id.* at 302. Noting that courts "commonly speak of the fact of a prior conviction," the Court reasoned that "an order vacating a predicate conviction is spoken of as a fact just as sensibly as the order entering it," for both are "subject to proof or disproof like any other factual issue." *Id.* at 306–07. Thus, for limitations purposes, a vacatur order is a "factual predicate" that may be "discovered" by the petitioner. The Court reasoned that even though by "bringing that proceeding, the petitioner causes the factual event to occur," *id.* at 307, a petitioner must "learn of the court's response in the state proceeding," which "surely qualif[ies] as a kind of discovery falling within the statutory language," *id.* at 308.

The Court also concluded that "the statute allows the fact of the state-court order to set the 1-year period running only if the petitioner has shown due diligence in seeking the order." *Id.* at 302. With regard to predicate convictions for federal sentencing enhancements, "diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging the prior conviction with its potential to enhance the later sentence." *Id.* at 308. For this purpose, the one-year period "begins when a petitioner receives notice of the order vacating the prior conviction, provided that he has sought it with due diligence in state court, after entry of judgment in the federal case with the enhanced sentence." *Id.* at 298. Because the petitioner in *Johnson* failed to explain his 21-36 month delay in seeking the vacatur order, the Court found that his petition was untimely. *Id.* at 311.

**B. Whether the November 2010 *nunc pro tunc* order is a factual predicate**

*Johnson* addressed a state-court vacatur order, but language in the majority opinion supports a broad reading of what can qualify as a factual predicate. Specifically, in observing that one can "'discover' a fact that one has helped generate," the Court reasoned that this discovery can "be the result of a court proceeding or some other process begun at the petitioner's behest," *id.* at 310, implying that any court order a petitioner generates may potentially qualify.

Four circuits have concluded that *Johnson* extends beyond state-court vacatur orders. The Third Circuit has read *Johnson* to support the proposition that any "legal event" in the petitioner's litigation history may "constitute the 'factual predicate' of a habeas corpus claim under section 2254." *McAleese v. Brennan*, 483 F.3d 206, 216–17 (3d Cir. 2007); *see also id.* (holding that parole denial is a factual predicate). Similarly, the Fourth Circuit has concluded that the modification of a state conviction (as opposed to the vacatur of a conviction), can be a factual predicate. *See United States v. Williams*, 162 F. App'x 254, 257 (4th Cir. 2006). The Seventh and Ninth Circuits have also indicated that *Johnson* extends beyond vacatur orders. *See Lo v. Endicott*, 506 F.3d 572, 575–76 (7th Cir. 2007) (observing that "some state court judgments could potentially constitute a trigger for a new limitations period," but noting that it must be a "fact within [the petitioner's] own litigation history that changed his legal status"); *Shannon v. Newland*, 410 F.3d 1083, 1088 (9th Cir. 2005) ("*Johnson* established[d] that a state-court decision can, in some circumstances, qualify as a fact . . . ."). The Second and Fifth Circuits have held that legal events in a petitioner's litigation history were factual predicates, but before *Johnson* was decided. *See Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 280–81 (2d Cir. 2003) (parole revocation); *Kimbrell v. Cockrell*, 311 F.3d 361, 363–64 (5th Cir. 2002) (prison disciplinary hearing).

I agree with the reasoning of our sister circuits and, therefore, would hold that the November 2010 *nunc pro tunc* qualifies as a factual predicate under § 2244(d)(1)(D). Like the petitioner in *Johnson*, Crangle helped generate the November 2010 *nunc pro tunc* order by filing a motion with the court. And as with the vacatur order in *Johnson*, the November 2010 order was subject to proof and disproof and was in Crangle's own litigation history.

## C. Whether Crangle exercised due diligence in seeking the order.

The requirement that the petitioner act with "due diligence in seeking the order," *Johnson*, 544 U.S. at 302, "does not require the maximum feasible diligence, only 'due,' or reasonable, diligence," *DiCenzi v. Rose*, 452 F.3d 465, 470 (6th Cir. 2006) (citation omitted). In making this determination, the court must account for "the reality of the prison system" and be careful to avoid "impos[ing] an unreasonable burden on prisoners." *Id.* at 470. Due diligence "is an inexact measure of how much delay is too much," *Johnson*, 544 U.S. at 309 n.7, but entails

"prompt action . . . as soon as [the petitioner was] in a position to realize that he ha[d] an interest in" challenging the conviction and thereby generating the state court order that serves as the factual predicate, *id.* at 308.

The Seventh Circuit's decision in *Villanueva v. Anglin*, 719 F.3d 769 (7th Cir. 2013), is instructive. There, the petitioners' "plea agreements made no mention of any term of supervised release even though Illinois imposes a three-year term of mandatory supervised release" on their respective charges. *Id.* at 771. At both of their "plea hearings, however, the state judges mentioned the mandatory term of supervised release and obtained the defendants' understanding that the law imposed such a term." *Id.* Learning about the mandatory supervised release requirement in prison, both petitioners filed pro se petitions for post-judgment relief. *Id.* at 772. They exhausted their state remedies, then filed § 2254 petitions in federal district court, arguing that imposing mandatory supervised release violated due process. *Id.* at 773 (citing *Santobello v. New York*, 404 U.S. 257 (1971)). Both petitions were denied on the merits. *Id.*

On appeal, the Seventh Circuit considered whether § 2244(d)(1)(D) applied to the petitioner's claim. *Id.* at 774. Due diligence, the court observed, "is equivalent to a rule of 'inquiry notice.'" *Id.* (quoting *Clark v. United States*, 703 F.3d 1098, 1100 (7th Cir. 2013) (Posner, J.)); *see also Cole v. Warden, Georgia State Prison*, 768 F.3d 1150, 1156 (11th Cir. 2014) (adopting *Villanueva*'s inquiry-notice analysis). "For limitations purposes," the court explained further, "the question is whether, given the state judge's statements during the plea and sentencing hearing, [the petitioner] *could* have known" about the mandatory supervised release "had he exercised due diligence." *Id.* at 775. The Seventh Circuit concluded that the state court judges' "warning that petitioners' pleas subjected them to mandatory supervised release was all the notice they needed." *Id.* at 774. Because the petitioners "could have learned of [the mandatory supervised release requirement] on the day they were sentenced had they used due diligence," the court held that their federal habeas petitions were time barred. *Id.*

Unlike the state court judges in *Villaneuva*, who informed the petitioners that their sentences included mandatory supervised release, here both the state court judge and Crangle's own attorney told him that he would *not* receive post-release control. The prosecutor did not challenge the state court judge's ruling, nor did he object to the state court's journal entry of

Crangle's sentence. Thus, at the time of his sentencing, Crangle lacked inquiry notice of his sentence to post-release control supervision.

In all likelihood, Crangle did not receive inquiry notice until August 1, 2010, when *State ex rel. Carnail v. McCormick*, 126 Ohio St. 3d 124, 931 N.E.2d 110 (Ohio 2010), was made available in the prison law library.[1] Crangle filed his motion to withdraw his plea on August 5, 2010—just four days later. That is certainly diligent for the purposes of § 2244(d)(1)(D). *Compare Granger v. Hurt*, 90 F. App'x 97, 100 (2004) (holding that delay of two months was "not unreasonable" in light of "the reality of the prison system"), *with Johnson*, 544 U.S. at 311 (holding that delay of 21-36 months was not diligent absent explanation for delay).

The State cites to a line of authority holding that new case law cannot serve as a factual predicate under § 2244(d)(1)(D). Although the State acknowledges that Crangle does not actually argue that the *Carnail* decision is a factual predicate, it asserts that these cases also establish that Crangle cannot use *Carnail* to show due diligence. I find that leap of logic unsupported.

The cases referenced all share a common feature: the new case law did not directly alter the petitioner's legal status, but instead established a generally-applicable substantive rule, which, the petitioner argued, helped his claim. In *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005), for instance, the petitioner argued that a California Supreme Court decision was a "factual predicate" that "triggered a new one-year statute of limitations" under *Johnson*. *Id.* at 1088. Although the Ninth Circuit acknowledged that "*Johnson* established[d] that a state-court decision can, in some circumstances, qualify as a fact," it concluded that the California Supreme Court decision did not. Whereas "[i]n *Johnson*, the state-court decision in question was a decision in the petitioner's *own case*" that "directly eliminated [the petitioner's] legal status as a convict," the Ninth Circuit observed, the California Supreme Court case "merely established an abstract proposition of law" and "had no direct effect on [the petitioner's] legal status." *Id.* at 1088–89.

---

[1]The State argues that Crangle was on notice before *Carnail* came down, pointing to his plea agreement and various state court decisions. I find all of these arguments unpersuasive.

The Seventh Circuit drew a similar distinction in *Lo v. Endicott*, 506 F.3d 572 (7th Cir. 2007), noting that a state court order that is a "fact within [the petitioner's] own litigation history that changed his legal status," *id.* at 575, is needed to "trigger for a new limitations period," *id.* at 576. The Fourth and Eighth Circuits have also adopted this distinction. *See Whiteside v. United States*, 775 F.3d 180, 183-84 (4th Cir. 2014) (concluding that state court decision did not qualify as a factual predicate because it merely "announced a generally applicable legal rule" and "did not directly alter [the petitioner's] legal status"); *E.J.R.E. v. United States*, 453 F.3d 1094, 1098 (8th Cir. 2006) (holding that state court decision did not qualify as a fact because it was "a ruling exclusively within the domain of the courts and is incapable of being proved or disproved").

Here, the relevant state court order—the November 2010 *nunc pro tunc* order—was a fact in Crangle's own litigation history that changed his legal status, not an unrelated case establishing an abstract proposition of law. Thus, under the line of authority from the Fourth, Seventh, Eighth, and Ninth Circuits, the November 2010 order would qualify as a factual predicate under § 2244(d)(1)(D). It is true that this line of authority would also hold that *Carnail* cannot serve as a factual predicate. But Crangle does not argue that *Carnail* qualifies as a factual predicate. Instead, *Carnail* goes to due diligence; that is, it helps explain why Crangle waited until August 5, 2010 to challenge his sentence. None of these cases suggest that *Carnail* cannot be used for this purpose.

Practically, I think that permitting new substantive law to inform due diligence simply makes good sense. Consider an example. Assume that a state supreme court exercises original jurisdiction and strikes down a state crime—State Crime X—as unconstitutional. *See, e.g.*, Ohio Const. art. IV, § 2(B) (providing that the Ohio Supreme Court's original jurisdiction includes habeas corpus). Assume further that no other lower court has spoken on this issue. Isn't the state supreme court's unexpected decision relevant to the due diligence inquiry? If an inmate moves to vacate his State Crime X conviction within days of the state supreme court decision, it seems perfectly reasonable to me that this evidences the exercise of due diligence by that inmate.

The State then warns that permitting new substantive law to inform due diligence would "open the floodgates." I am unpersuaded. Applying *Johnson* in the manner described above would not restart the limitations period every time a case is decided that could help a petitioner's

claim. A case establishing a new substantive rule may help to show that the petitioner exercised due diligence in seeking the court order, but it would not, on its own, reset the statute of limitations; the petitioner must actually use the case to generate a court order in his own litigation history. Moreover, § 2244(d)(1)(D) provides that the one-year limitations period runs from "the date on which the *factual predicate of the claim or claims presented* could have been discovered through the exercise of due diligence." *Id.* (emphasis added). That also functions as a check, because only court orders that can serve as a factual predicate for a claim restart the clock, and then only as to the claim based on the order; claims that do not rely on the order remain time barred.

In sum, I would hold that the November 2010 *nunc pro tunc* order was a factual predicate and that *Carnail* properly informed just the issue of whether Crangle exercised due diligence in seeking that order. Both *Johnson* and the decisions of our sister circuits support this reading. I would therefore hold that Crangle has stated another available avenue for relief because he has shown the necessary due diligence and that the November 2010 *nunc pro tunc* order is a factual predicate that resets the limitations period under § 2244(d)(1)(D).