RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0145p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DAMIEN FREEMAN,

> *Petitioner-Appellant*,

*v.*

> No. 18-3913

LYNEAL WAINWRIGHT, Warden,

> *Respondent-Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:17-cv-01368—James S. Gwin, District Judge.

Argued:  March 11, 2020

Decided and Filed:  May 12, 2020

Before:  NORRIS, DONALD, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Katharine Mitchell-Tombras, COVINGTON & BURLING, LLP, Washington, D.C., for Appellant.  Jerri Fosnaught, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.  **ON BRIEF:**  Katharine Mitchell-Tombras, COVINGTON & BURLING, LLP, Washington, D.C., for Appellant.  Jerri Fosnaught, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

NALBANDIAN, J., delivered the opinion of the court in which NORRIS, J., joined. DONALD, J. (pp. 9–13), delivered a separate dissenting opinion.

---

**OPINION**

---

NALBANDIAN, Circuit Judge.  Missed deadlines are preventable and costly.  So courts enforce them strictly.  Unfortunately for Damien Freeman, that means the door to the federal courthouse is closed. This case presents a single question: does a limited resentencing that results in a better-than-before sentence constitute a new "judgment," as defined in 28 U.S.C. § 2244(d)(1)(A), which sets forth a one-year limitations period for habeas petitions?  We hold that it does not, so we AFFIRM the district court's dismissal of Freeman's 28 U.S.C. § 2254 petition.

**I.**

Damien Freeman pleaded guilty to felony murder in 2001.  An Ohio trial court sentenced Freeman to fifteen years to life imprisonment, followed by post-release control for the maximum period allowed by law.  Freeman failed to timely appeal.

Freeman took the proverb "if at first you don't succeed, try, try again" to heart.  After four unsuccessful motions to withdraw his guilty plea and appeal belatedly, Freeman collaterally moved in state court to vacate his conviction and sentence in 2015.  He argued the sentencing court's imposition of post-release control was "contrary to law" because Ohio law does not permit post-release control for felony murder convictions and his felony murder conviction was improper because there was no evidence he committed an underlying violent felony.  (R. 9-2, Def.'s Mem. in Opp'n at PageID # 150.) The state trial court disagreed and denied his motion. But the Ohio Eighth Appellate District Court of Appeals granted Freeman post-conviction relief for the first time, at least in part.  After affirming Freeman's conviction, that court agreed Ohio law does not provide for post-release control for felony murder.  And it quoted *State v. Opalach*, No. 100938, 2014 WL 6065666, at *2 (Ohio Ct. App. Nov. 13, 2014), in holding that "a sentencing entry that incorrectly imposes postrelease control does not render the entire sentence void.  Only that portion of the judgment that improperly imposes postrelease control is void." (R. 9-2, Journal Entry and Op. at PageID # 234.)  So the Court of Appeals remanded Freeman's

motion with direction "that a *nunc pro tunc* entry be entered to delete the imposition of postrelease control." (*Id.*)

On remand, in January 2017, the trial court "vacated and replaced, *nunc pro tunc*" the journal entry from Freeman's original sentencing in 2001. (R. 9-2, Journal Entry at PageID # 238.) The court's revision left intact its original sentencing journal entry except for the single sentence discussing post-release control, which it removed.

After securing this partial victory, Freeman tried another challenge, this time federal court. He filed the 28 U.S.C. § 2254 petition at issue in June 2017, challenging his conviction, in the Northern District of Ohio. But without reaching the merits of Freeman's petition, the district court granted Wainwright's motion to dismiss, finding that Freeman's petition is time barred. The court did however grant Freeman a certificate of appealability on whether the Ohio court's removal of post-release control from Freeman's sentence created a new judgment under § 2244(d)(1). So Freeman appeals the dismissal.

## II.

We review de novo a district court's dismissal of a 28 U.S.C. § 2254 petition for untimeliness. *Crangle v. Kelly*, 838 F.3d 673, 677 (6th Cir. 2016).

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes strict limits on federal habeas corpus petitioners. Relevant here, 28 U.S.C. § 2244(d)(1) imposes a "1-year period of limitation" on all "application[s] for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." That limitations period begins to run on the latest of four dates, but it's uncontested here the limitations period began to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" § 2244(d)(1)(A).

"Final judgment in a criminal case means sentence. The sentence is the judgment." *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937)). And Freeman's sentence became final in January 2002 when he did not appeal within thirty days. *See* Ohio R. App. P. 4. But Freeman did not file his § 2254 petition until

fifteen years later. So § 2244(d)(1) would ordinarily require dismissal of the petition. In response, Freeman argues the Ohio trial court's revision of its sentencing journal entry in January 2017 constituted a new "judgment" under § 2244, thus his filing of the § 2254 petition six months later was within § 2244(d)(1)'s one-year period of limitation. Freeman's argument has some appeal but we ultimately reject it.

When courts engage in a full resentencing, the resulting sentence is a new "judgment" that restarts § 2244(d)(1)'s timeclock. *King v. Morgan*, 807 F.3d 154, 156 (6th Cir. 2015). Which means the petitioner can challenge both his new sentence and his underlying conviction. *Id*. at 158. And in *Crangle v. Kelly*, we extended that principle to some limited resentencings, holding that "[a] new, worse-than-before sentence . . . amounts to a new judgment." 838 F.3d at 678. But to reach that conclusion, we first had to identify the limited resentencings that *do not* create new judgments. We noted the

> line of cases in which a limited resentencing *benefits* the prisoner, such as in a sentence-reduction proceeding under 18 U.S.C. § 3582(c) or Criminal Rule 35(b). Such sentence modifications, federal law provides, do not disturb the underlying initial judgment, which continues to "constitute[ ] a final judgment." 18 U.S.C. § 3582(b). As several other courts of appeals have noted, such "a reduced sentence [is] not a new one."

*Id*. (quoting *United States v. Jones*, 796 F.3d 483, 485 (5th Cir. 2015)) (alteration in original). So to conclude that a court's addition of post-release control by *nunc pro tunc* order to the petitioner's sentence created a new "judgment" under § 2244(d)(1), we first had to determine that the court's action resulted in a "new, worse-than-before sentence[.]" *Id*. at 678–80.

We confronted a limited resentencing resulting in a better-than-before sentence in *Eberle v. Warden, Mansfield Correctional Institution*—albeit an unpublished decision before *Crangle*. 532 F. App'x 605 (6th Cir. 2013). In facts much like Freeman's, the Ohio Court of Appeals determined that an Ohio trial court incorrectly included post-release control in a defendant's sentence, so it "vacated the postrelease-control portion of the lower court's sentencing entry." *Id*. at 607. The defendant then filed a § 2254 petition more than one year after his original sentence became final. *Id*. Because "no resentencing hearing was held, no new sentencing entry was filed, and no new judgment issued" we determined the Ohio Court of Appeals' "single

sentence modification [was] not a new sentence that restart[ed] the AEDPA clock." *Id*. at 610. The same holds true in Freeman's case, especially post-*Crangle*.

Just like *Eberle*, the trial court here did not hold a resentencing hearing. Nor, in effect, did it issue a *new* sentencing entry or issue a *new* judgment. Rather, it made a "single sentence modification" to Freeman's original sentencing journal entry, striking all post-release control. *See id*.; (R. 9-2, Journal Entry at PageID # 238.) True, the trial court labeled its own action as "vacat[ing] and replac[ing]" the original sentencing journal entry. But as Freeman concedes, we are not bound by the label a state court places on its actions, instead we must look to what the court actually did. (Appellant's Reply Br. at 6.) After all, the trial court only struck a single sentence from its original journal entry without even holding a hearing. What's more, Ohio law tells us "a sentencing entry that incorrectly imposes postrelease control does not render the entire sentence void. Only that portion of the judgment that improperly imposes postrelease control is void." *Opalach*, No. 100938, 2014 WL 6065666, at *2. So it's clear that Freeman's resentencing, to the extent that term appropriately characterizes what the trial court did, was limited.

*Crangle* makes clear that limited resentencings that benefit the prisoner "do not disturb the underlying initial judgment, which continues to constitute a final judgment." 838 F.3d at 678 (internal quotation marks omitted). If adding post-release control "materially increases the potential restrictions on [a prisoner's] liberty" and leaves the prisoner worse off, then removing post-release control must materially decrease the potential restrictions on a prisoner's liberty and leave the prisoner better off. *Id*. at 679. Thus, the trial court's modification of Freeman's sentence qualifies as a "limited resentencing [that] *benefits* the prisoner," and did not disturb Freeman's initial judgment. And because Freeman filed his § 2254 petition over fifteen years after that initial judgment became final, § 2244(d)(1) requires dismissal of the petition.

Freeman tries to avoid *Crangle* three ways. We discuss each in turn.

First, Freeman argues the *Crangle* holding we apply here is dicta. He says distinguishing between sentences that leave a prisoner worse off and sentences that leave a prisoner better off was "'not necessary to the outcome' of the case and [is] therefore 'dicta that is not binding.'"

(Appellant's Br. at 14 (citing *United States v. McMurray*, 653 F.3d 367, 375 (6th Cir. 2011).) Freeman gets the legal rule right but the application wrong.

True, when an opinion discusses an issue beyond what the court must decide in that case, those statements do not bind future panels. *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 781 (6th Cir. 2014) (per curiam). But we believe that *Crangle's* discussion of limited resentencings that benefit prisoners was necessary to determine whether an addition of post-release control to an existing sentence created a new judgment under § 2244(d)(1). That's because, as *Crangle* remarks, there is a line of cases from many circuits holding that various forms of sentence modifications and reductions do not disturb the underlying judgment. *See* 838 F.3d at 678. So to not flout these precedents, we had to explain that it is not just the limited nature of these resentencings that explains why they do not create a new judgment. Rather, it is the combination of their limited nature *and* beneficial result for the prisoner. *See id*. And, in fact, we framed the "final question" as whether the sentence modification at issue there created a "new, worse-than-before sentence[.]" *See id*. at 678–79. This seminal issue was not dicta, but a question we had to reach. So our answer then binds us now.**[1]**

Second, Freeman says *Crangle*'s statement "that its holding is limited to new, worse-than-before sentences is inconsistent with both binding Supreme Court precedent and persuasive authority from other Circuits. Those decisions compel the conclusion that any substantive re-sentencing—even one favorable to a petitioner—constitutes a new judgment, resetting the statute of limitations clock." (Appellant's Br. at 16–17 (internal quotation marks omitted).) He cites two Supreme Court cases *Crangle* allegedly violates. First is *Burton v. Stewart*, 549 U.S. 147 (2007). Freeman argues that because the Court in *Burton* held that a resentencing that increased a prisoner's potential early release credits created a new judgment under AEDPA, *Crangle*'s distinction between resentencings that leave a prisoner better off and those that leave a prisoner worse off cannot be correct. But that ignores the first aspect of *Crangle*'s holding.

---

**[1]**As we discuss below, Supreme Court and Sixth Circuit precedent, other than *Crangle*, do not address the question presented here. So if Freeman were correct that the portion of *Crangle* we rely on is dicta, than this would be a question of first impression for our Circuit. Even if that were the case, we would reach the same result as the panel in *Crangle*.

Under *King*, any full resentencing creates a new judgment for AEDPA purposes. *See* 807 F.3d at 156. *Crangle* only says *limited* resentencings that provide a prisoner with a better-than-before sentence do not create new judgments. *See* 838 F.3d at 678. In the state court proceedings underlying *Burton*, a Washington trial court engaged in a full resentencing on remand.**[2]** *See generally State v. Burton*, 101 Wash. App. 1041 (2000) (discussing the resentencing procedure employed on remand). So *Burton* confirms our holding in *King* and is consistent with *Crangle*.

Next Freeman claims *Crangle* violates *Magwood v. Patterson*, 561 U.S. 320 (2010). He says that because a resentencing resulting in the same sentence as the original sentence constituted a new judgment in *Magwood*, it can't be true that a prisoner must be left worse off for a resentencing to create a new judgment under AEDPA. But an Alabama court conducted a full resentencing for Magwood. *See Magwood v. State*, 548 So. 2d 512, 513 (Ala. Crim. App. 1988). So again, *Crangle* accords with Supreme Court precedent.

Finally, we note that "we need not look [elsewhere] when binding precedent from our own Circuit answers the question." *United States v. Cavazos*, 950 F.3d 329, 336 (6th Cir. 2020). Because *Crangle* binds us, any persuasive authority from other Circuits is irrelevant. But it is relevant that we have consistently applied *Crangle* to cases like Freeman's, albeit in unpublished orders. *See, e.g.*, *In re Robinson*, No. 18-4210, 2019 U.S. App. LEXIS 14685, at *4–5 (6th Cir. May 16, 2019); *Martin v. Phillips*, No. 17-5499, 2018 WL 5623651, at *2 (6th Cir. July 13, 2018); *Cortez v. Warden Chillicothe Corr. Inst.*, No. 17-3530, 2018 U.S. App. LEXIS 27015, at *3–4 (6th Cir. Feb. 16, 2018); *In re Lloyd*, No. 17-4014, 2018 U.S. App. LEXIS 1990, at *3 (6th Cir. Jan. 25, 2018).

As a last-ditch effort, Freeman puts forth several "practical considerations" he claims bolster his position. But "[t]he text is the law, and it is the text that must be observed." *Appoloni v. United States*, 450 F.3d 185, 199 (6th Cir. 2006) (Griffin, J., concurring in part) (quoting

---

**[2]**The dissent's lengthy discussion of *Burton* omits this key difference between that case and ours. Because *Burton* dealt with a full resentencing it did not "directly" address the question presented here: whether *limited* resentencings that result in better-than-before sentences for the prisoner constitute new judgments under § 2244(d)(1)(A). And because *Burton* is distinguishable it does not bind us here.

Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 22–23 (1997)).  So the statutory text and precedents interpreting that text must guide us. Weighing practical considerations is the responsibility of Congress, not the judiciary.  *See Georgia v. Public.Resource.Org, Inc.*, --- S. Ct. ----, 2020 WL 1978707 at *9 (Apr. 27, 2020) ("It is generally for Congress, not the courts, to decide how best to pursue [a statute's] objectives.  And that principle requires adherence to precedent when, as here, we have construed the statutory text and tossed the ball into Congress's court, for acceptance or not as that branch elects." (cleaned up)).

## III.

For these reasons, we **AFFIRM** the district court's dismissal of Freeman's 28 U.S.C. § 2254 petition because it is time barred.

---

**DISSENT**

---

BERNICE BOUIE DONALD, dissenting.  I disagree with the majority's conclusion that *Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2016) necessitates its holding.  In determining so, the majority's decision conflicts with Supreme Court precedent.  Therefore, I dissent.

In *Crangle*, we reversed the district court's holding that Crangle's 28 U.S.C. § 2254 petition was untimely.  838 F.3d at 675.  The timeliness of Crangle's petition hinged on whether the recent change to his sentence—the imposition of post-release control—constituted a new judgment under 28 U.S.C. § 2244(d)(1)(A).  *Id.*  We held that "[a] new, worse-than-before sentence . . . amounts to a new judgment." *Id.* at 678.  Because Crangle's *nunc pro tunc* order, adding post-release control, increased the restrictions on his liberty, it constituted a worse-than-before sentence and amounted to a new judgment, restarting his § 2244(d)(1)(A) clock.  *Id.* at 679-80.

*Crangle* tells us that a *nunc pro tunc* order changing the imposition of post-release control, but otherwise keeping a defendant's sentence intact—what the majority considers a "limited resentencing"—constitutes a new judgment because the change amounts to "a material difference in [a defendant's] conditions of confinement." *Id.* at 680.  *Crangle* answers whether a defendant is subject to a new judgment when the change to the defendant's sentence is worse-than-before.  What about, as here, where the defendant's sentence may be characterized as better-than-before?  Is the answer any different?[1]

As the majority points out, *Crangle* also answers that question, but it does so unnecessarily.  The majority claims that, in order to reach *Crangle*'s holding, "we first had to identify the limited resentencings that *do not* create new judgments."  Op. at 4.  But that is simply not true.  We acknowledged as much in *Crangle*, noting that, "*[o]ur analysis is consistent with* a line of cases in which a limited resentencing benefits the prisoner . . . ." *Id.* at 678

---

[1]The majority ignores a third question:  What about when it is unclear whether the sentence is better- or worse-than-before?

(emphasis added and removed). The majority failed to include this prelude to *Crangle*'s discussion, which emphasizes that its analysis is "consistent with a line of cases" answering a different question than the one posed, based on different circumstances. That is dictum. "Strictly speaking an obiter dictum is a remark made or opinion expressed by a judge, in his decision upon a cause, by the way—that is, incidentally or collaterally, and not directly upon the question before the court . . . ." *PDV Midwest Ref., L.L.C. v. Armada Oil & Gas Co.*, 305 F.3d 498, 510 (6th Cir. 2002) (quoting Black's Law Dictionary, 1100 (7th ed. 1999)). Whether a better-than-before sentence constitutes a new judgment was not the question before us in *Crangle*. Unlike mere dicta, the binding aspect of a court's holding is "necessary to" its outcome. *United States v. McMurray*, 653 F.3d 367, 375-76 (6th Cir. 2011). Contrary to the majority's construction, "consistent with" does not have the same meaning as "necessary to." It is not necessary to define the incidental or collateral bounds of the answer to a question in order to answer it.

While *Crangle* answered our question in dictum, the Supreme Court was confronted with the question directly. In *Burton v. Stewart*, 549 U.S. 147 (2007), a case upon which *Crangle* relied, the Supreme Court was faced with determining whether the petitioner's amended, better-than-before sentence constituted a new judgment for the purposes of § 2244. Although the Supreme Court ultimately held that the district court lacked jurisdiction to consider Burton's petition, in doing so, the Court determined that Burton's better-than-before sentence—increasing his eligibility for early release credits—amounted to a new judgment. *Burton*, 549 U.S. at 156-57.

In 1994, a state trial court sentenced Burton to a 562-month sentence for rape, robbery, and burglary, based on two alternative grounds under Washington's sentencing scheme—running all three counts consecutively for a total of 562 months or, in the alternative, imposing an "exceptional sentence of 562 months solely for the rape conviction" with the other sentences running concurrently. *Id.* at 149-50. In 1996, after a prior, unrelated conviction was overturned, Burton received an amended judgment and sentence, which "imposed a new sentence that relied solely on an exceptional 562-month sentence for the rape conviction, run concurrently with the other two terms." *Id.* at 150. On direct review, the state appellate court upheld Burton's

conviction, but remanded for resentencing because the trial court's exclusive reliance on the exceptional rape sentence decreased Burton's potential early release credits. *Id.* In 1998, the trial court entered a second amended judgment and sentence, again imposing a 562-month sentence, but this time reverting to its original ground—running the three counts consecutively. *Id.* at 151.

Importantly, because of the adjusted basis of his sentence under the 1998 judgment, Burton became eligible for early release credits for up to thirty-three percent of his sentence, whereas when he was charged solely based on the rape count pursuant to the 1996 judgment his early release credit could not exceed fifteen percent of his term. *Washington v. Burton*, No. 35747-6-I, 1997 Wash. App. LEXIS 933, at *14 (Ct. App. June 9, 1997). Burton therefore received a less severe, better-than-before sentence. *Id.* at *37-38 ("Because the [1996 sentence] is more severe than the [1994] sentence in its implications for potential good time, we . . . vacate the sentence and remand.").

While Burton's direct appeal of this new sentence was pending, he filed a § 2254 petition in the federal district court, challenging his custody by disputing the constitutionality of his three convictions, but not addressing his sentencing claims. *Burton*, 549 U.S. at 151. The district court denied his petition, and the Ninth Circuit affirmed on appeal. *Id.* In 2002, Burton filed another § 2254 petition, now challenging the constitutionality of his 1998 sentence. *Id.* at 151-52. The district court again denied his petition, and the Ninth Circuit affirmed on appeal. *Id.* at 152. The Supreme Court granted certiorari, holding that "because the 2002 petition is a 'second or successive' petition that Burton did not seek or obtain authorization to file in the District Court, the District Court never had jurisdiction to consider it in the first place." *Id.* In making this holding, it was necessary for the Court to address Burton's argument that his instant petition was not a second or successive petition because it challenged a different judgment than his earlier petition:[2]

> But this argument misreads AEDPA, which states that the limitations period applicable to "a person in custody pursuant to the judgment of a State court" shall

---

[2]Specifically, Burton claimed that his 1998 petition was filed pursuant to his 1994 judgment, while the instant 2002 petition challenged his 1998 judgment. *Id.* at 155-56.

run from, as relevant here, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." § 2244(d)(1)(A).   Final judgment in a criminal case means sentence.   The sentence is the judgment.   Accordingly, Burton's limitations period did not begin until both his conviction and sentence became final by the conclusion of direct review or the expiration of the time for seeking such review—which occurred well after Burton filed his 1998 petition.

*Id.* at 156-57 (internal citations and quotations omitted).

The Supreme Court's holding that the district court did not have jurisdiction to consider Burton's second or successive petition required a finding that Burton's better-than-before 1998 judgment, increasing his early release credit, constituted a new judgment.   *Id.*   Consider it the other way:   if the Supreme Court did not decide that Burton had received a new judgment in 1998 because it was better than his 1996 judgment, then Burton's petition would have been untimely as it would have been filed more than one year after the limitations period.[3]   Had that been the Supreme Court's reasoning, then the Court would have had no need to address the second or successive petition argument.

*Burton* thus necessitates that whether a new sentence is better or worse for the petitioner is not an element of whether a new sentence constitutes a new judgment for the purposes of § 2244.   Whatever dicta was added in *Crangle* regarding differences between better- or worse-than-before sentences is contrary to the Supreme Court's binding precedent.   As previously examined, *Crangle* declared that a change, even a "limited" one, such as to a defendant's post-release control is "a material difference in [the defendant's] conditions of confinement" which constitutes a new judgment.   *Id.* at 680.   Therefore, because Freeman's June 28, 2017, petition was filed within one year of his new judgment becoming final on December 27, 2016, Freeman's petition was filed within the one-year limitations period imposed by 28 U.S.C. § 2244(d)(1).

This view is also consistent with the precedent of several of our sister circuits.   *See Gonzalez v. Sherman*, 873 F.3d 763, 765-66 (9th Cir. 2017) (finding that petitioner's new

---

[3]If this was the case, Burton's 1996 judgment would have become final on April 20, 1998, when the Supreme Court denied his petition for writ of certiorari to the Court of Appeals of Washington.   *Burton v. Washington*, 523 U.S. 1082 (1998) (denying cert.).   Therefore, the time for Burton to file his instant petition would have expired on April 20, 1999, long before he filed the petition in 2002.

sentence crediting 554 days of presentence credit compared to his previous sentence crediting 533 days amounted to a new judgment); *In re Gray*, 850 F.3d 139, 140 (4th Cir. 2017) (holding that petitioner's new sentence of life imprisonment compared to his previous sentence of death constituted a new judgment); *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1275-76 (11th Cir. 2014) (per curiam) (concluding that petitioner's new sentence of twenty-seven years' imprisonment compared to his previous sentence of forty years' imprisonment, resulted in a new judgment).

The majority is right: the text is the law. But we are bound by this Court and the Supreme Court's precedential interpretations of that text. Although we have failed to apply *Burton*'s holding in a number of unpublished post-*Crangle* opinions, *see* Op. at 7, the only thing worse than making those errors is continuing to defend them when the answer is now clear. I would **VACATE** the district court's dismissal of Freeman's § 2254 petition and **REMAND** it for reconsideration.