RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0177p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ROBERT COX, as duly appointed Personal Representative and Special Administrator of the Estate on behalf of Greta Cox,

            *Plaintiff-Appellant,*

    *v.*

TOTAL QUALITY LOGISTICS, INC.; TOTAL QUALITY LOGISTICS, LLC,

            *Defendants-Appellees.*

┐
│
│
│
├ No. 24-3599
│
│
│
┘

─────────────────

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:22-cv-00026—Jeffery P. Hopkins, District Judge.

Argued: January 29, 2025

Decided and Filed: July 8, 2025

Before: GILMAN, STRANCH, and LARSEN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Adina H. Rosenbaum, PUBLIC CITIZEN LITIGATION GROUP, Washington, D.C., for Appellant. Gregory M. Utter, CALLOW + UTTER, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Adina H. Rosenbaum, PUBLIC CITIZEN LITIGATION GROUP, Washington, D.C., W. Matthew Nakajima, Justin A. Sanders, Gus J. Lazares, RITTGERS & RITTGERS, Lebanon, Ohio, Christopher T. Saucedo, SAUCEDO, HARRIGAN, APODACA, GRIESMEYER, APODACA PC, Albuquerque, New Mexico, for Appellant. Gregory M. Utter, Joseph M. Callow, Jr., CALLOW + UTTER, Cincinnati, Ohio, for Appellees. John C. Camillus, LAW OFFICES OF JOHN C. CAMILLUS, LLC, Columbus, Ohio, Jonathan L. Hilton, HILTON PARKER LLC, Reynoldsburg, Ohio, Paul R. Kerridge, DURST KERRIDGE, LLC, Cincinnati, Ohio, for Amici Curiae.

———————————

**OPINION**

———————————

JANE B. STRANCH, Circuit Judge.  Robert Cox sued Total Quality Logistics, Inc. and Total Quality Logistics, LLC (together, "TQL") for negligence under Ohio law.  Mr. Cox alleged that TQL, in its capacity as a freight broker, negligently hired an unsafe motor carrier, resulting in a motor vehicle crash that killed his wife, Greta Cox.  The district court dismissed the action on the ground that Mr. Cox's claims were preempted by the Federal Aviation Administration and Authorization Act ("FAAAA" or "the Act"), 49 U.S.C. § 14501(c).  For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

## I.  BACKGROUND

### A.  Statutory Background

In 1978, Congress passed the Airline Deregulation Act ("ADA"), which heavily deregulated the American airline industry.  Pub. L. No. 95-504, 92 Stat. 1705; *see Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 255–56 (2013).  Congress's express purpose in passing the ADA was "to encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the quality, variety, and price of air services."  92 Stat. at 1705.  To "ensure that the States would not undo federal deregulation with regulation of their own," *Morales v. Trans World Airlines*, 504 U.S. 374, 378 (1992), the ADA included a preemption provision, providing that:

> [A] State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1).

Two years later, Congress passed the Motor Carrier Act of 1980, extending this deregulation to the trucking industry.  Pub. L. No. 96-296, 94 Stat. 793; *see Dan's City*, 569 U.S.

at 256. In 1994, Congress built on these deregulatory efforts by passing the FAAAA. In particular, the Act sought to mitigate "unreasonable burden[s] on interstate commerce," "unreasonable cost[s] on the American consumers," and "imped[iments] [to] the free flow of trade, traffic, and transportation of interstate commerce" by preempting "certain aspects of the State regulatory process." Pub. L. No. 103-305, 108 Stat. 1569, 1605. "Borrowing from the ADA's preemption clause, but adding a new qualification," *Dan's City*, 569 U.S. at 256, the Act provided that:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder *with respect to the transportation of property*.

49 U.S.C. § 14501(c)(1) (emphasis added). At the same time, the Act enumerated multiple exceptions to § 14501(c)(1), including the following "safety exception":

> [Section 14501(c)(1)] *shall not restrict the safety regulatory authority of a State with respect to motor vehicles*, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization[.]

*Id.* § 14501(c)(2)(A) (emphasis added). Congress passed the safety exception "to ensure that its preemption of States' economic authority over motor carriers of property, § 14501(c)(1), 'not restrict' the preexisting and traditional state police power over safety." *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 439 (2002) (quoting 49 U.S.C. § 14501(c)(2)(A)).

## B. Factual and Procedural Background

TQL is an Ohio-based freight broker.[1] As a broker, TQL works with shippers to find authorized motor carriers to transport goods. In May 2019, TQL arranged for motor carrier Golden Transit, Inc. to transport a load of goods via tractor trailer from Minooka, Illinois to

---

[1]In reciting the relevant facts, we accept as true all factual allegations in Mr. Cox's complaint. *See DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014).

Perris, California. In doing so, TQL disregarded public information, available via the Federal Motor Carrier Safety Administration ("FMCSA") website's Safety Measurement System, indicating that Golden Transit was an unsafe motor carrier with a history of "on-road safety violations and deficiencies." R. 1, Compl., PageID 4. An "overwhelming number of [Golden Transit's] drivers [were] deemed illegal to be on the road," and "more than 7 out of every 10 of its trucks were not allowed to legally be on the roadway." *Id.* The driver of the May 2019 shipment, Amarjit Singh Khaira, was purportedly an inexperienced and unsafe driver.

On May 8, 2019, Greta Cox was driving along Interstate 40 in Oklahoma with her grandson, Brion Ragland, in the passenger seat. The two approached a construction zone where the left lane of the highway was closed, and all traffic was directed to move to the right lane at a reduced speed. Ms. Cox complied with these directives, remaining in the right lane and slowing down her vehicle. But Khaira, whose "semi-truck" was just behind Ms. Cox's vehicle, failed to slow down and, going at a rate of over sixty miles per hour, collided with Ms. Cox's vehicle. Ms. Cox died in the collision and Ragland incurred physical injuries.

Mr. Cox, in his capacity as the personal representative and special administrator of his wife's estate, joined by Ragland, sued TQL in federal court, alleging that TQL, in its capacity as a broker, was negligent in hiring Golden Transit. The complaint also alleged that TQL qualified as a motor carrier, and it lodged claims against TQL in that capacity, including negligence and violations of various federal and state regulations regarding motor carriers. The district court dismissed the complaint in full for failure to state a claim, holding that (1) the lawsuit fell within the scope of the FAAAA's preemption provision, § 14501(c)(1); and (2) the lawsuit did not fall within the Act's safety exception, § 14501(c)(2)(A). Mr. Cox timely appealed.[2]

---

[2]Ragland did not join Mr. Cox in appealing the district court's judgment, and is, therefore, not a party to this appeal.

## II. ANALYSIS

The district court had diversity jurisdiction to hear this case under 28 U.S.C. § 1332.[3] Mr. Cox, in turn, appeals the district court's final judgment, conferring this court with jurisdiction to hear the appeal under 28 U.S.C. § 1291.

On appeal, Mr. Cox appears to concede that TQL qualifies solely as a broker, not a motor carrier, and challenges only the district court's dismissal of his negligent hiring claim against TQL in its capacity as a broker. He contends that the court erred in finding that the negligent hiring claim fell outside the safety exception and was therefore preempted by the FAAAA.

This circuit has yet to consider whether the FAAAA preempts negligent hiring claims brought against brokers under a state's common law. But various federal courts across the country, including three circuit courts, have addressed the issue, resulting in a circuit split. *Compare Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1030–31 (9th Cir. 2020) (holding that negligent hiring claims against brokers fall within the safety exception and are thus not preempted by the Act), *with Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1272 (11th Cir. 2023) (concluding that negligent hiring claims against brokers are preempted because they fall within the scope of § 14501(c)(1) and are not "with respect to motor vehicles" under the safety exception), *and Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 464 (7th Cir. 2023) (agreeing with *Aspen* that the Act preempts negligent hiring claims against brokers).[4]

---

[3]Mr. Cox's complaint does not allege the citizenship of each of Total Quality Logistics, LLC's members and sub-members. Instead, it simply alleges that "Total Quality Logistics, LLC is an Ohio limited liability company with its principal place of business [in] . . . Ohio." R. 1, Compl., PageID 2. Because a limited liability company ("LLC") "has the citizenship of its members and sub-members" for purposes of diversity jurisdiction, *Akno 1010 Mkt. St. St. Louis Mo. LLC v. Pourtaghi*, 43 F.4th 624, 626 (6th Cir. 2022), we ordered supplemental briefing on Defendants' citizenship. In their supplemental briefing, the parties confirmed the citizenship of each of Total Quality Logistics, LLC's members and sub-members. *See* D. 50, Appellees' Letter (listing the LLC's members and sub-members and attesting that each is a citizen or resident of Ohio); D. 52, Appellant's Supp. Br. (averring that each member and sub-member of the LLC was a citizen of Ohio when the action commenced, based in part on public filings in the Southern District of Georgia showing that the LLC had the same members and sub-members— all of which were citizens of Ohio—as of 2021, just before Mr. Cox's suit commenced in 2022, and through 2023 (citing ECF Nos. 83-1, 83-2, 86-1, *Gauthier v. Hard to Stop LLC*, No. 6:20-CV-00093 (S.D. Ga. 2020))). Because the complaint and supplemental briefing establish that each Plaintiff was a citizen of New Mexico and each Defendant was a citizen of Ohio at the time the action commenced, we are satisfied that there is complete diversity of citizenship. *See Akno*, 43 F.4th at 626.

[4]The defendant in *Miller* sought Supreme Court review. In response, the United States filed an amicus brief arguing that *Miller* correctly applied the safety exception, and that Supreme Court review was not warranted.

District courts across the country, including district courts in this circuit, have also diverged on this issue. *See Hawkins v. Milan Express, Inc.*, 735 F. Supp. 3d 933, 939–40 (E.D. Tenn. 2024) (reaffirming its prior ruling that the safety exception applies to negligent hiring claims against brokers); *McElroy Truck Lines, Inc. v. Moultry*, No. 3:23-CV-01056, 2024 WL 4593852, at *9–11 (M.D. Tenn. Oct. 28, 2024) (concluding that the FAAAA preempts negligent hiring claims against brokers); *Bertram v. Progressive Se. Ins. Co.*, No. 2:19-CV-01478, 2021 WL 2955740, at *2 (W.D. La. July 14, 2021) (collecting cases outside the Sixth Circuit). Now, with this caselaw in mind, and without an on-point Supreme Court precedent, this court must conduct its own independent review.

"We review de novo the district court's dismissal on federal preemption grounds." *McDaniel v. Upsher-Smith Lab'ys, Inc.*, 893 F.3d 941, 944 (6th Cir. 2018). "State-law claims can be preempted expressly in a federal statute or regulation, or impliedly, where congressional intent to preempt state law is inferred." *Yates v. Ortho-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281, 293 (6th Cir. 2015). This case deals with the FAAAA's express preemption provision. Accordingly, to determine whether Mr. Cox's claim is preempted, this court must look to the "plain wording" of the Act, which "necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993); *accord Freeman v. Wainwright*, 959 F.3d 226, 232 (6th Cir. 2020) (noting that courts must interpret a statute based on its "statutory text and precedents interpreting that text").

Mr. Cox does not contest the district court's conclusion that § 14501(c)(1) encompasses his state law claim; he argues only that the safety exception saves his claim from preemption. Nonetheless, because the initial applicability of § 14501(c)(1) is a threshold issue, we address it below, before turning to the exception.

---

Brief for the United States as Amicus Curiae, *C.H. Robinson Worldwide, Inc. v. Miller*, 142 S. Ct. 2866 (2022) (Mem.) (No. 20-1425). The Court denied certiorari. *C.H. Robinson Worldwide, Inc. v. Miller*, 142 S. Ct. 2866 (2022). The plaintiff in *Ye* also sought review from the Court, which again denied certiorari. *Ye v. GlobalTranz Enters., Inc.*, 144 S. Ct. 564 (2024) (Mem.).

**A.  The Scope of § 14501(c)(1)**

For Mr. Cox's state law claim to be preempted, it must fall within the scope of § 14501(c)(1).  The relevant inquiry, therefore, is whether the claim constitutes a state "law, regulation, or other provision having the force and effect of law related to a price, route, or service of any . . . broker . . . with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).

The Supreme Court has held that "the phrase 'other provision having the force and effect of law' includes common-law claims."  *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014) (interpreting identical language in the ADA's preemption provision).  Thus, Mr. Cox's claim falls within the ambit of § 14501(c)(1) if it is "related to" a broker's "price, route or service." 49 U.S.C. § 14501(c)(1).  In the preemption context, the terms "related to" or "relating to" "express a broad pre-emptive purpose" and should be broadly construed to mean "having a connection with or reference to."  *Morales*, 504 U.S. at 383–84.  The connection to a broker's prices, routes, or services may be direct or indirect, as long as the connection is not "too tenuous, remote, or peripheral."  *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 371, 375 (2008) (quoting *Morales*, 504 U.S. at 390).

Mr. Cox's claim seeks to hold TQL liable for negligently hiring an unsafe motor carrier. The claim "challeng[es] the adequacy of care the company took—or failed to take—in hiring [Golden Transit] to provide shipping services."  *Ye*, 74 F.4th at 459.  Recognition of this type of claim under Ohio's common law obligates brokers to adhere to a basic standard of care when hiring motor carriers.  To avoid litigation and the imposition of monetary judgments, brokers are required to conform to that standard in their hiring practices—for example, by dedicating time and resources to evaluating the safety metrics of prospective motor carriers.  *See id.*  In other words, negligent hiring claims affect how brokers conduct their services and the amount of money that they spend on those services.  That establishes a connection between Mr. Cox's claim and broker services that is more than "tenuous, remote, or peripheral."  *Rowe*, 552 U.S. at 375 (quoting *Morales*, 504 U.S. at 390).

Section 14501(c)(1) also requires that the state common law claim relate to the services of a broker "with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The Act defines "transportation" to "include[]" any "services related to" the "*movement [of] . . . property.*" 49 U.S.C. § 13102(23)(B) (emphasis added). Although the Act does not define "with respect to," the Supreme Court in *Dan's City Used Cars, Inc. v. Pelkey* construed the term to mean "concern[s]." 569 U.S. at 261. We need not parse the exact contours of the term here because there is no genuine dispute that the transportation of property is core to the services at issue in Mr. Cox's claim. As discussed, the claim alleges that TQL negligently hired an unsafe motor carrier to transport goods from Illinois to California. The broker services implicated in this type of tort claim plainly "concern" the transportation, or movement, of property. *Id.*; *accord* 49 U.S.C. § 13102(2) (defining the term "broker" as any entity that "as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, *transportation by motor carrier* for compensation" (emphasis added)). Mr. Cox's negligent hiring claim thus meets the criteria of each of § 14501(c)(1)'s subparts.

The district court was therefore correct in holding that § 14501(c)(1) encompasses negligent hiring claims against brokers, including Mr. Cox's claim. This conclusion aligns us with every circuit court to consider the issue to date. *See Miller*, 976 F.3d at 1023–26; *Aspen*, 65 F.4th at 1266–68; *Ye*, 74 F.4th at 458–60.

Because the district court did not err in its finding that Mr. Cox's claim falls within the scope of § 14501(c)(1), we must next consider whether the claim falls within the Act's safety exception.

## B. The Safety Exception

Mr. Cox argues that his claim falls within the scope of § 14501(c)(2)(A), which exempts from preemption "the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). To determine whether the exception applies, we must address two issues: (1) whether common law tort claims like Mr. Cox's negligent hiring claim are part of a state's "safety regulatory authority," and (2) whether Mr. Cox's claim is "with respect to motor

vehicles."  *Id.*  TQL does not contest that the term "safety regulatory authority of a State" encompasses common law actions like Mr. Cox's negligent hiring claim.  Nonetheless, because Mr. Cox's claim must satisfy this first prong for the safety exception to apply, we address the issue below.

### 1. The "Safety Regulatory Authority of a State"

The FAAAA does not expressly define the term "safety regulatory authority of a State." We must, therefore, construe the term based on its "plain wording," in accordance with the broader statutory text and judicial precedent.  *Easterwood*, 507 U.S. at 664; *see Freeman*, 959 F.3d at 232.

The Supreme Court has repeatedly held that a state's "regulatory authority" encompasses "common-law duties and standards of care."  *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637 (2012); *accord Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008) ("Absent other indication, reference to a State's 'requirements' [in an express preemption statute] includes its common-law duties.").  This is because common law duties are often a powerful tool of governmental regulation.  By creating a standard of care and imposing the "obligation to pay compensation" in the form of monetary damages when that standard is violated, states retain "a potent method of governing conduct and controlling policy."  *Kurns*, 565 U.S. at 637 (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959)).  In keeping with this principle, the Supreme Court and lower courts have consistently rejected the argument that a state's regulatory authority can encompass only positive enactments of law.  *See, e.g.*, *id.*; *Riegel*, 552 U.S. at 324; *Miller*, 976 F.3d at 1026–29 (holding that the term "regulatory authority" in § 14501(c)(2)(A) encompasses a state's common law); *Aspen*, 65 F.4th at 1268–70 (same).

This accords with the FAAAA's broader statutory text and context.  As noted above, the Supreme Court has held that the language of the Act's preemption provision includes common law claims.  *Ginsberg*, 572 U.S. at 284 (interpreting identical language in the ADA's preemption provision).  The safety exception, in turn, carves out an exemption to the preemption provision that preserves a state's power to regulate motor vehicle safety.  49 U.S.C. § 14501(c)(2)(A); *Ours Garage*, 536 U.S. at 439 (explaining that Congress added § 14501(c)(2)(A) to maintain

"the preexisting and traditional state police power over safety"). Although the preemption provision broadly preempts any state laws "related to" a broker's transportation services, including common law claims, the safety exception correspondingly shields from preemption the subset of those laws that regulate motor vehicle safety, which necessarily includes certain types of common law claims. As other courts have noted, excluding the common law from the safety exception's reach could also produce the odd result of exempting from preemption certain tort claims in states that have codified their common law, while simultaneously preempting virtually identical tort claims in states that have not done so. *See Miller*, 976 F.3d at 1027.

The determination that a state's "regulatory authority" encompasses common law claims, however, is not the end of the matter. The common law claim must also implicate "safety." 49 U.S.C. § 14501(c)(2)(A) (excluding from preemption a state's "*safety* regulatory authority . . . with respect to motor vehicles" (emphasis added)). A state law meets this criterion if it is "genuinely responsive to safety concerns." *Ours Garage*, 536 U.S. at 442. Mr. Cox has sued TQL for negligently hiring a dangerous motor carrier, which resulted in a vehicular accident that killed his wife. Such negligent hiring claims seek to enforce a standard of care on brokers which, in turn, requires brokers to do their due diligence in ensuring that they are hiring safe motor carriers. This type of tort claim is, therefore, "genuinely responsive to safety concerns." *Id.*

Because common law claims like Mr. Cox's are part of the "safety regulatory authority of a State," Mr. Cox has satisfied the first prong of § 14501(c)(2)(A).

### 2. The "With Respect to Motor Vehicles" Requirement

The second prong of the safety exception provides that the state law at issue must be "with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). Whether negligent hiring claims like Mr. Cox's claim are "with respect to motor vehicles" is vigorously disputed by the parties and is the source of the current circuit split. The district court, like the Seventh and Eleventh Circuits, adopted a narrow interpretation of this portion of the exception, concluding that "Congress intended claims concerning brokers to be outside the scope of the safety exception." R. 29, D. Ct. Op. & Order, PageID 613. Mr. Cox contends that the district court's reading of the

Act was substantively erroneous and logically flawed, and he argues that negligent hiring claims against brokers, brought pursuant to a state's common law, can indeed be "with respect to motor vehicles." Once again, we look to the exception's "plain wording," as well as the broader statutory text and judicial precedent. *Easterwood*, 507 U.S. at 664; *see Freeman*, 959 F.3d at 232.

To determine whether § 14501(c)(2)(A) applies, we must first construe the term "with respect to." As noted, in the FAAAA context, the Supreme Court in *Dan's City* construed the term to mean "concern[s]." *Dan's City*, 569 U.S. at 261 (interpreting the phrase "*with respect to the transportation of property*" in § 14501(c)(1) and holding that the plaintiff's claim for negligent storage and disposal of his vehicle did not fall within its scope (emphasis added)). The *Dan's City* Court did not, however, delineate the precise contours of the term or provide detailed explanation on what it requires. It did not, for example, explain whether, or the extent to which, the term requires a "direct" connection, which some circuits have read the safety exception to require.[5] *See Ye*, 74 F.4th at 462; *Aspen*, 65 F.4th at 1271.

Nonetheless, *Dan's City*'s analysis provides some helpful guidance. In explaining why the plaintiff's state law action was not "with respect to," or concerning, the transportation of property, the Court noted that the claim against the defendant was negligent storage and disposal of the plaintiff's vehicle. *Dan's City*, 569 U.S. at 262. Consequently, the conduct for which the plaintiff sought redress was entirely "subsequent to [the vehicle's] 'transportation.'" *Id.* Because this alleged negligent conduct "d[id] not involve 'transportation' within the meaning of the [FAAAA]," *Dan's City* reasoned, the plaintiff's state law claim lacked the requisite connection to the transportation of property, thereby escaping § 14501(c)(1)'s preemptive scope. *Id.* Applying this reasoning to the identical language in the safety exception indicates that, when courts evaluate whether a common law negligence claim concerns motor vehicles, they must

---

[5]In contrast, the Court reiterated its preexisting caselaw explaining that the term "related to," as used in § 14501(c)(1), "embraces state laws 'having a connection with or reference to' carrier 'rates, routes, or services,' whether directly or indirectly." *Dan's City*, 569 U.S. at 260 (quoting *Rowe*, 552 U.S. at 370).

look to the substance of the underlying allegations and assess whether the alleged negligent conduct "involve[s]" motor vehicles.[6] *Id.*

Turning to the second half of the phrase, "with respect to *motor vehicles*," the FAAAA expressly defines "motor vehicle" as any "vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation, or a combination." 49 U.S.C. § 13102(16). The Act's statutory definitions also make clear that such motor vehicles are core to the services provided by brokers. The Act defines "broker" as any "person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, *transportation by motor carrier* for compensation." *Id.* § 13102(2) (emphasis added). And it defines "motor carrier" as any "person providing *motor vehicle transportation* for compensation." *Id.* § 13102(14) (emphasis added). Thus, the Act recognizes that brokers are entities that work with motor carriers to sell, provide, and arrange for transportation via motor vehicles.

With this statutory language and Supreme Court precedent in mind, we turn to Mr. Cox's substantive claim. Mr. Cox alleges that TQL negligently "disregarded the lives and the safety of the travelling public" by overlooking Golden Transit's history of "on-road safety violations and deficiencies" when it selected Golden Transit to transport goods on the highway via a "semi-truck." R. 1, Compl., PageID 4–6. Neither party disputes that the "semi-truck" at issue in the complaint constitutes a "motor vehicle," as defined by § 13102(16). The complaint also alleges that the "publicly available red flags" that TQL allegedly ignored included information, reported by FMCSA's Safety Measurement System, that an "overwhelming number of [Golden Transit's] drivers [were] deemed illegal to be on the road" and "more than 7 out of every 10 of its trucks were not allowed to legally be on the roadway." *Id.* at PageID 4.

---

[6]TQL points to the *Dan's City* Court's observation that the "phrase 'with respect to the transportation of property'" "'massively limits the scope of preemption' ordered by the FAAAA" in § 14501(c)(1). *Dan's City*, 569 U.S. at 261 (quoting *Ours Garage*, 536 U.S. at 449 (Scalia, J., dissenting)). But there, the Court was commenting not on the "with respect to" portion of the phrase, but on its object, "transportation of property." That term, the Court explained, required that the state law at issue implicate "services related to th[e] movement of property," which narrowed the types of laws subject to § 14501(c)(1) and saved the plaintiff's negligence claim from preemption. *Id.* at 261–62.

The crux of the alleged negligent conduct is that TQL failed to exercise reasonable care in selecting a safe motor carrier to operate a motor vehicle on the highway, resulting in a vehicular accident that killed Ms. Cox—allegations that plainly "involve" motor vehicles and motor vehicle safety. *Dan's City*, 569 U.S. at 262. Indeed, the safety violations that TQL allegedly ignored pertain directly to motor vehicles. A core purpose of FMCSA's Safety Measurement System, after all, is to discern and report "crash risk." *Flat Creek Transp., LLC v. Fed. Motor Carrier Safety Admin.*, 923 F.3d 1295, 1297 (11th Cir. 2019) (quoting 81 Fed. Reg. 11875–11876 Table 2 (Mar. 7, 2016)). Golden Transit's track record of unsafe motor vehicle operation, and TQL's alleged disregard for that public track record, constitute the basis of the negligent hiring claim. Simply put, there is no way to disentangle motor vehicles from Mr. Cox's substantive claim.

To address this alleged negligence, Mr. Cox's claim seeks to enforce a common law requirement that brokers exercise reasonable care in selecting a safe motor carrier to transport goods by motor vehicle. This requirement would necessarily constitute an exercise of a state's regulatory authority "with respect to," or concerning, "motor vehicles." *See* 49 U.S.C. § 14501(c)(2)(A); *Dan's City*, 569 U.S. at 259.

On appeal, TQL largely relies on the reasoning of the district court, as well as the reasoning of the Seventh and Eleventh Circuits, that, because the safety exception does not expressly reference "brokers," it follows that Congress intended to place claims against brokers outside the exception's scope. *See* Appellee Br. 16. That interpretation, however, is based on a faulty reading of the safety exception. The exception contains no mention of *any* regulated persons or entities, including the three other entities listed in the preemption provision. *Compare* 49 U.S.C. § 14501(c)(1) (preempting state laws relating to the prices, routes, or services of brokers, as well as motor carriers, motor private carriers, and freight forwarders), *with id.* § 14501(c)(2)(A) (shielding from preemption "the safety regulatory authority of a State with respect to motor vehicles"). Instead, it provides a carveout from § 14501(c)(1) for certain state laws based on the substance of those laws—that is, whether the laws respond to safety issues and concern motor vehicles. The language of the safety exception indicates that its role is not to set forth which persons or entities can and cannot have their conduct regulated; rather, it is to set

forth which state laws are and are not preempted and to preserve a state's "preexisting and traditional [] police power" to regulate motor vehicle safety, regardless of who is subject to the regulatory requirement.[7]  *Ours Garage*, 536 U.S. at 439.

TQL raises a related argument, also relied on by the Seventh and Eleventh Circuits, that § 14501(c)(2)(A) requires a *direct* connection between the state law and motor vehicles, and that negligent hiring claims like Mr. Cox's fail to fulfill this connection because their relationship to motor vehicles is too attenuated.  There is, however, good reason to doubt that the safety exception requires a *direct* connection to motor vehicles.  The word "direct" does not appear in the statute's text.  And as mentioned above, "with respect to" means "concerns."  *Dan's City*, 569 U.S. at 261.  The verb "concern" means "to have to do with *or relate to*."  *Concern*, Am. Heritage Coll. Dictionary (4th ed. 2007) (emphasis added); *accord Concern*, Merriam-Webster, https://perma.cc/C3GT-AVHU (last visited June 30, 2025) (defining "concern" as "to relate to" or "to bear on").  In *Morales*, the Court reasoned that "[t]he ordinary meaning of ['relating to'] is a broad one."  504 U.S. at 383.  Following its preemption caselaw in the ERISA context, the Court, in both *Morales* and *Rowe*, further reasoned that a state law may "relate to" a particular subject (like broker rates, routes, and services) "even if a state law's effect . . . 'is only indirect.'"  *Rowe*, 552 U.S. at 370 (quoting *Morales*, 504 U.S. at 386).  Because we read the ordinary meaning of "with respect to" as synonymous with both "concern" and "relating to," there is reason to believe that a state law may be "with respect to" motor vehicle safety even if the law's connection to that subject is not direct.

That said, we need not decide today whether the safety exception requires a direct connection to motor vehicles.  Even if such a connection is required, Mr. Cox's claim would not be preempted.  On this point, we respectfully diverge from the Seventh and Eleventh Circuits.  Both suggest that, for a direct connection to exist, the regulated entity must be one which directly

---

[7]For similar reasons, it is immaterial that, "[w]here Congress regulates motor vehicle safety" in the FAAAA and Title 49 more broadly, it "addresses motor vehicle ownership, operation, and maintenance—but not broker services." *Ye*, 74 F.4th at 462.  The safety exception preserves *state* authority to regulate motor vehicle safety.  Congress is entitled to its own policy choices, and its lack of federal regulation of broker services does not mean that it intended to proscribe states from promulgating their own regulations of brokers.  Construing the safety exception based on what Congress itself does and does not regulate would contravene the purpose of the exception, which is to preserve "the preexisting and traditional state police power over safety." *Ours Garage*, 536 U.S. at 439.

owns or operates motor vehicles. *Aspen*, 65 F.4th at 1272 (concluding that "a claim against a broker is necessarily one step removed from a 'motor vehicle'" because motor carriers, not brokers, are the entities who provide motor vehicle transportation); *Ye*, 74 F.4th at 461–62 (reasoning that, because brokers "do[] not own or operate motor vehicles like" motor carriers, the connection between broker services and motor vehicles "is too attenuated").

That formulation misses the mark. The exception requires that the state law at issue substantively concern motor vehicles. It focuses on the connection between the state law and motor vehicles, and not necessarily on the connection between the regulated entity and motor vehicles. Requiring that the regulated entity directly own or operate motor vehicles would impose an additional limitation beyond what the text of the exception requires. Such a requirement also stands in tension with Supreme Court caselaw indicating that, when we evaluate whether a negligence claim "concern[s]" a subject, we should consider the claim's substantive allegations, including whether the alleged negligent conduct "involve[s]" that subject.[8] *Dan's City*, 596 U.S. at 261–62.

As discussed, the basis of Mr. Cox's claim is that TQL negligently hired an unsafe motor carrier to transport goods by motor vehicle, resulting in a fatal vehicular accident. He seeks to hold TQL liable for ignoring Golden Transit's record of unsafe motor vehicle operation and placing a motor vehicle, driven by an unsafe driver, on the highway. That theory of liability comports with the FAAAA's recognition that motor vehicles are core to the services provided by brokers, as well as the basic reality that brokers are ultimately responsible for placing such motor vehicles on the road, even if those motor vehicles are driven and owned by a different entity. *See* 49 U.S.C. § 13102(2), (14), (16). The common law requirement that Mr. Cox's claim seeks to

---

[8]*Aspen* and *Ye* also reason that a broader interpretation of the safety exception would render redundant § 14501(c)(2)(A)'s subsequent preservation of "the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo." 49 U.S.C. § 14501(c)(2)(A); *see Aspen*, 65 F.4th at 1272; *Ye*, 74 F.4th at 464. As Mr. Cox notes, however, that provision is no less redundant under *Aspen*'s and *Ye*'s interpretation because it relates directly to motor vehicles, particularly the portion allowing states to impose "limitations based on the size or weight of the motor vehicle." 49 U.S.C. § 14501(c)(2)(A). Moreover, the Supreme Court has emphasized that, in the context of statutory interpretation, "[r]edundancy is not a silver bullet," and sometimes a "statute contains some redundancy." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019). It is logical that Congress would provide a broad carveout for states to regulate motor vehicle safety, while expressly enumerating other areas of state regulatory authority that are motivated not only by motor vehicle safety, but also other concerns, such as traffic efficiency and public health.

enforce would, in turn, directly regulate a broker's sale, provision, and arrangement of motor vehicle transportation. *See id.* Assuming that a direct link between Mr. Cox's substantive claim and motor vehicles is indeed required, we conclude that such a link exists here.

We therefore hold that, where a negligent hiring claim against a broker substantively concerns motor vehicles and motor vehicle safety, that claim is within "the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). Because Mr. Cox's claim is part of that specific class of common law negligence claims, it falls within the ambit of the safety exception.

## III. CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.